Woodruff, J.
In my opinion, we ought to consider ourselves bound by the decision in Robert v. The Traders' Insurance Co., (9 Wend. 404,) S. C. in Error, (17 Wend. 631.).
In that case, it is held,'that when a policy of insurance is effected by a mortgagor, and the policy, with the assent of the insurer, is assigned to the mortgagee, a subsequent violation of the conditions of the policy, by the mortgagor, will not deprive the mortgagee of a recovery, for a loss thereafter occurring. And see the same point, in Tillou v. Kingston Mutual Ins. Co., (1 Selden, 405.)
The present case involves no new principle, nor furnishes any just ground for a discrimination.
An assignment of a policy to a mortgagee, is, in effect, nothing more than an irrevocable power of attorney, to collect the amount of loss, if any shall happen, coupled with an interest in the assignee, greater or less, according to the extent of his interest in the subject of the insurance. Under the form of words of assignment, it is a direction, to the insurer, to pay such loss to the mortgagee.
When the assignment is made by the express consent of the insurer, the entire transaction amounts to this: the insurer insures the interest of the mortgagor in his premises, and agrees, upon certain conditions, to pay the amount of loss, if any happen, and then, by mutual consent, the benefit of this engagement (which is nothing more, nor less, than the right to claim whatever money may become payable, by reason of a loss,) is assigned to the mortgagee of the premises. In form, here is no relaxation of the conditions of the insurance, and it would be impossible to say, that, by the mere terms of the assignment, or the assent of the insurer thereto, the insurer thereby waived any qualification which was annexed to his liability before the assignment, or that the assignment, and the assent of the insurer thereto, were other than a consent, that if, according to the terms and conditions of the original contract, any sum of money should become payable, the right to receive the same should belong to the mortgagee. They do not, in terms, convert the policy into an insurance upon the interest of the mortgagee, nor modify the express terms of the contract, which states, by name, the person insured, and that the subject of the-insurance is his property. And yet, in the cases above referred to, it is held, that such an assignment should be treated as, according *522 to the plain, intent of the transaction, a protection to the mortgagee, not liable to be affected, and defeated, by the subsequent acts of the mortgagor—not upon the ground that the transaction converts the policy into a mere insurance of the interest of the mortgagee, for, if that were so, then, according to the uniform course of decision in this state, the insurers, upon paying the loss, would be entitled to claim a subrogation to his position, and to collect the mortgage debt from the mortgagor, but, on the ground that the mortgagee has acquired such an interest, in the contract, as that, although it is an insurance, in the mortgagor’s name, and upon his interest, and upon express conditions, which form an essential part of the contract, yet, after such assignment, it shall not be in the power of the mortgagor to destroy the contract itself, or defeat it. • The Supreme Court, it is true, in 9 Wend., (475,) appear to regard the assignment, as producing the effect, to convert the contract into an insurance upon the interest of the mortgagee exclusively, but that is expressly disaffirmed, on the review, in the Court of Errors, (17 Wend. 687,) where it is said that the assignment gave the assignee the right to recover the damage sustained, if it accrued while he was the assignee; but such recovery, and the payment thereof, would have been applied to the benefit of the assignor, in discharge of his indebtedness, pro tanto: and the fact, that the assignor (mortgagor) paid the mortgage, did not enure to the benefit of the insurer, nor have any other effect, than to bring back to him that interest, in the policies, which he had assigned—that the assignment could not alter, nor vary the extent of the liability of the insurer, but the policies remained good, for their original purpose, to wit, “ to pay the loss and damage, on the buildings, occasioned by fire,” not to the mortgagor, if it happened while the mortgagee held the policy, for the latter had an interest, and that interest, to the amount of the damage, the insurer had become liable to pay.
Nor does the doctrine proceed upon the idea that it is, in legal effect, a new contract of insurance in favor of the mortgagee, for, if that were so, then the mortgagee, in case of loss, might, upon common law principles, have maintained his action and recovered in his own name, whereas, it has often been held, that he can only sue in the name of the mortgagor, the assignor. (5 Wend. 200; 3 Denio, 254; 4 Hill, 187; 3 Id. 88.)
And it is proper to notice, that the arguments of the counsel *523 for the defendants in the case referred to, (9 Wend. 406,) proceed upon the same grounds which are now urged against the claim of the plaintiff herein, and, upon the same view of the nature and effect of an assignment of a policy as is taken, of a policy containing a clause, malting the loss payable to the mortgagee, by Chief Justice Shaw, in the case which will be presently referred to.
Whatever doubts might be suggested of the correctness of the' decision in Robert v. The Traders' Ins. Co., it has been since so distinctly affirmed in the court of last resort, that it is not open to question here. See 2 Comst. 218; 1 Id. 293, and Tillou v. The Kingston Mutual Ins Co., 1 Sel. 403; in which last case, the principle stated is, that after an assignment of the policy with the assent of the insurer, no act of the assured shall impair the rights of the assignee. In the case of Neve v. The Charleston Ins. Co., (2 McMullen, 237,) the same rule was sanctioned, to wit, that after an assignment of a policy, with -the assent of the insurer, the assignee is entitled to recover to the amount of his interest in the policy, notwithstanding the assured had deprived himself of the right to recover by acts of fraud.
Although the cases above referred to, have not been called in question by counsel on the argument herein, it seems proper to give them some prominence in the consideration of the subject, for two purposes: viz., to show that the courts in this state have manifested' a disposition to give effect to the transaction according to the plain intent of the parties: i. e., to secure to the assignee, (mortgagee,) the protection which it was the obvious intent of the parties, (insurers as well as insured,) that he should have, and that beyond the power of the assured to impair. And also, for the purpose of instituting a comparison between the principles said to be applicable to the present case, and those urged to defeat the recovery in those' cited, which, it will be seen, are alike applicable to either.
In each case, the contract is with the mortgagor.- He is the party insured, and the subject of insurance is his property, and the premium is paid by him. In neither case is there any express agreement by the insurer to pay any thing, unless events shall so happen, that the amount of the loss would, (according to the very terms of the policy, and under all the conditions and qualifications annexed thereto), become payable to the insured himself.
*524 In each case, by the express assent of the insurer, the amount. of loss has been made payable to the mortgagee, or in the language of Chief Justice Shaw, in the case mentioned below, the insurer has in effect “ stipulated to pay to the appointee of the assured, when a loss should become payable, instead of paying to the assured himself,” for this is the import of the assent given by the insurer to the assignment as above already suggested. In neither case is any interest less than that of absolute ownership expressed to be the subject of the insurance, and nothing in the transaction indicates that the interest of the mortgagee is regarded as the object of protection to any extent, except so far as that is to be inferred from the apppointment made to him, in the one case embraced in the policy itself, and in the other, in the assignment.
In neither case do the terms of the policy, nor of the policy and assignment taken together, expressly declare that the interests of both mortgagor and mortgagee 'are insured, or that any loss is to be paid, unless the interest of the mortgagor be injured by fire. Heither an assignment of the policy, nor a provision in the policy, that the loss shall be paid to the mortgagee, does more, in terms, than designate a person to whom the loss shall be paid, if the same' shall, according to the conditions of the policy, become payable. ISTor is it more necessary to regard the one than the other as a conversion of the policy into a contract to insure the interest of the mortgagee, as such. It is sufficient to say, as has been said, and decided, in regard to an assignment, that, although, the policy is upon the interest of the owner, (the mortgagor,) the mortgagee acquires, such a claim to or lien upon that insurance, as a collateral security for the payment of his debt, that no change or modification of that interest, or of the rights of such owner, shall destroy the mortgagee’s claim.
To say that a stipulation, in "a policy, making the loss payable to the mortgagee, gives the mortgagee a right to recover, under circumstances in which the mortgagor (the insured,) could not, is no more in conflict with the terms of the policy issued, than to say, that a mere assignment of the policy itself has that effect. In both cases, the insurance was primarily based upon the interest of the mortgagor, and the interest of the mortgagee is derivative only; and it is but in accordance with the plain intent inferrible from the whole transaction, to say, that the mortgagee has a lien upon *525 the contract, collateral to his debt, and as security therefor, which no subsequent act of the assured, or change of his interest, should be permitted to impair.
It may, perhaps, suggest our views of the correspondence of the two cases very clearly, to suppose that two plaintiffs (mortgagees,) come into court, each with a policy granted to their respective mortgagors, upon precisely the same terms" and conditions, and as to each of which the same defences would avail, were the suits prosecuted by the mortgagors. One policy contains a clause in itself, declaring the loss to be payable to the mortgagee, and the other has an endorsement thereon, made contemporaneously with the execution of the policy, and with the consent of the insurers, assigning the policy to the mortgagee. May it not be asked, is there sound sense or reason in saying, that the right to recover is not alike in both cases ? And, again, the provision being inserted in the policy, that the loss should be paid to the mortgagee, would his right or title have been in any wise improved or strengthened, if the mortgagor had superadded an act of assignment? It is not perceived that the latter act has any force or effect, that is not involved already, in the first-named provision. Certainly, when applied to other agreements for the payment of money, an assignment does no more than direct to whom it shall be paid, when it shall become due.
The case of Macomber v. The Cambridge Mutual Insurance Company, (8 Cush. 133,) relied upon by the defendant’s counsel, is entitled to consideration. The clause upon which the plaintiff here relies, was contained in the policy in that ease. Although the decision was placed upon a totally distinct ground, rendering it wholly unnecessary to express any opinion of the effect of this clause, yet Oh. Justice Shaw says, “The insurance was upon the interest of Bemis & Bemis, payable to Macornber, mortgagee, in case of loss. The insurance was not upon the interest of Ma-comber, but the undertaking to pay him was a collateral and derivative contract, growing out of the principal contract with the assured, by which the company stipulated to pay to the appointee of the assured, when a loss should become payable, instead of paying to the assured himself. The ordinary effect of such a contract between the three parties is, that if the assured, whose property and interest alone are covered, should alien before a fire, he *526 would sustain no damage; there would be no loss for which the insurers would be responsible, and, therefore, the contingency upon which the appointee, by the terms of the contract, would have a right to claim, could not happen.”
It has been already shown that the import of the undertaking, by the insurers, as stated by Chief Justice Shaw, is in all respects applicable to the consent of the insurers, given to the assignment of a policy to the mortgagee. The contract of the insurers with such mortgagee, implied in their consent to an assignment, is collateral and derivative, growing out of the principal contract with the assured, and constitutes the mortgagee the appointee of the assured to receive payment in his stead, when a loss shall become payable. And that the learned Chief Justice himself was of that opinion, and means to be understood as holding, that the rights of the mortgagee, whether claiming under such a clause in the policy, or claiming by assignment of the policy, are identical, appears by his opinion in King v. The State Mut. Ins. Co., (7 Cush. 3, decided very shortly before the case above referred to,) in which he says, of the case in which a mortgagor insures, payable to the mortgagee, in case of loss, “ In that case, it is the mortgagor’s interest in the subject which is insured, with an irrevocable power of attorney ; in legal effect, an assignment to the mortgagee, as additional collateral security, to receive the avails of the loss, if one happens.” Again, he speaks of the insurance, in such case, as “an insurance of the interest of the mortgagor, by a contract with him, on a consideration made by him, and assigned to the mortgagee.”
It need hardly be added that this opinion affirms the views already expressed, and the courts of this state having declared the legal effect of such an assignment to be, to entitle the mortgagee to recover, notwithstanding acts of the insured which might defeat a recovery by the assured himself, the opinions of Chief Justice Shaw become opinions in favor of the present plaintiff.
Eor does this view of the opinion of the courts of Massachusetts rest in a mere dictum. It will appear, on examination, that they are quite consistent on this subject, and do, in fact, regard such a policy as is now under consideration as the same, in effect, as a policy assigned to the mortgagee, and that the effect of such an assignment is just what is stated in the above opinion, in Macom *527 ber v. Cambridge Ins. Co., in direct contradiction to the decisions in this state already referred to.
In Carpenter v. The Prov. Wash. Ins. Co., (16 Peters, 495, 501,) Mr. Justice Story declares his view of the rights of a mortgagee, under an assigned policy, in precise conformity with the dictum of Chief Justice Shaw, in 8 Cushing, thus: “ If the mortgagor insure, and assign the policy to the mortgagee, with the consent of the underwriters, as collateral security, that assignment operates solely as an equitable transfer of the policy, so as to enable the mortgagee to recover the amount, in case of loss; but it does not displace the interest of the mortgagor in the premises insured; on the contrary, the insurance is still his insurance, and on his property, and for his account; and so essential is this, that if the mortgagor should transfer the property to a third person, without the consent of the underwriters, so as to divest all his interest therein, and then a loss should occur, no recovery can be had therefor, against the underwriters.” Mr. Justice Barculo, in 7 Barbour, 575, very justly remarks, “ That case has never been law in this state;” and the cases above referred to are sufficient to that point. But that case is, doubtless, deemed the law in Massachusetts, and the remarks of the Chief Justice, cited from Macomber v. Cambridge Ins. Co., are to the same effect, and hence, also, the observation of the same distinguished Judge, in Felton v. Brooks, (4 Cush. 203,) where a policy had been assigned to a mortgagee, with the assent of the insurers, “ It may be, that after the alienation of the estate,” (by the assured) “to Rice, the policy was so far void, that no person had any longer an insurable interest in the premises, and, therefore, no loss could be recovered in case of fire,” &c.
The cases cited are not the only examples of difference between our own decisions and those of Massachusetts, and we may not hesitate to decline following this dictum, when we find their courts also holding, in direct opposition to our own, that when a mortgagee insures his own interest, as mortgagee, he may, in case of loss, collect both the insurance from the insurers, and the debt from the mortgagor. (King v. The State Mut. Fire Ins. Co., 7 Cush. 3.)
The right of the plaintiff in this case, has, moreover, the authority of the Supreme Court of Maine. In Motley v. Manufacturers' Ins. Co., (29 Maine, 337,) lessors for a term of years, under covenant to keep the property insured, procured a policy, *528 in which was inserted a stipulation thus: “in case of loss on the buildings, the same to be paid to Edward Motley, mortgagee.” The court regarded that insurance as an insurance for the benefit of the mortgagee, and as protecting his interest, as well as that of the assured: in that respect, conforming to the decisions in this state respecting an assigned policy; but went even further, and held, that under such a policy, 1 he mortgagee might maintain his action in his own name, a point not material now in this state, so far as it affects the form of the action, but of some importance, as showing how fully the contract created by such a policy was vested in the mortgagee.
And this case also notices a vie w readily suggested by a perusal of the pleadings and proofs he rein, though not raised by the counsel for the defence, viz.: that it does not affirmatively appear that the clause, “ loss if any, payable to Seth Grrosvenor, mortgagee,” was insertedjm the policy in pursuance of any pre-arrange-' ment or agreement, by which the mortgagee had a right to require such an insurance, or that the insurance was in fact made for his benefit with his knowledge or assent, or that the policy had been delivered to him before the fire. The insurance was, by its terms, and according to the views above expressed in legal effect for the benefit of the plaintiff, and so made, in terms of promise, by the defendants themselves, and in the ease last cited, the court say: “ It is sound doctrine, applicable to simple contracts generally, and the appropriate and well-established doctrine of contracts of insurance, that if one make a promise to another, for the benefit of a third, the latter can maintain an action upon it in his own name.” (1 J. R. 139; 10 Mass. 287.)
Bringing this action is a sufficient ratification by the plaintiff of the act of procuring the insurance for his benefit. The plaintiff comes into court, proves his interest as mortgagee, and brings with him the policy on which his claim is founded -, this is primé facie sufficient: it is quite enough to raise the presumption of delivery, according to the usual and natural course of business at or about the time of its date.
Although we might suppose counsel would deem it prudent to show, that in fact, (if it were true,) there was an agreement, that the premises should be insured for the benefit of the mortgagee—■ that he advanced his money upon that condition—and that this *529 policy was delivered at the time of such advance, or in pursuance of that arrangement. Still we think, that showing his interest, showing an insurance in form for his benefit, and the actual possession of the policy, and his bringing suit thereon, were prima, facie sufficient.
Judgment should be ordered for the plaintiff for the amount of the loss, $4,000, with interest, from the time when the loss was payable, (sixty days from the 10th of March, 1854,) with his costs of suit.
Bosworth, J.
Is this a policy insuring the plaintiffj as mortgagee ; or is it a policy insuring Eugene McCarty, as owner of the property insured ?
In terms, it is a contract between McCarty and the defendants. He is stated in it to be the party “insured,” the property insured is stated to be “his,” and the premium is recited to have been paid by him. The only clause of the policy referring to the plaintiff, is that which declares the “ loss, if any, payable to Seth Grosvenor, mortgagee.”
There is no evidence, except such as may be derived from the policy, tending to show, that the defendants were advised, when the policy was applied for, that the object of it was to protect the interest of the mortgagee, or that his interest as mortgagee was sought to be insured. Neither was any evidence given, except such as is furnished by the terms of the policy itself, that the plaintiff knew of the existence of the policy at the time it was effected, or prior to the loss; none certainly that it had been delivered to him prior to the loss, unless such evidence is furnished by the fact that he produced it at the trial, and by the terms of the policy.
Macomber v. Cambridge Fire Mutual Ins. Co., (8 Cush. 133,) was upon a policy, the body of which was, in terms, like that we are considering. In speaking of the nature and effect of the contract, irrespective of the rules and regulations annexed to, and forming part of the policy, Shaw, Chief Justice said: “ The insurance was on the interest of Bemis & Bemis, payable to Macomber, mortgagee, in case of loss. The insurance was not upon the interest of Macomber; but the undertaking to pay him was a collateral and derivative contract, growing out of the principal con *530 tract with the assured, by which the company stipulated to pay to the appointee of the assured, when a loss should become payable, instead of paying to the assured himself. The ordinary effect of such a contract between the three parties is, that if the assured, whose property and interest alone are covered, should alien before a fire, he would sustain no damage; there would be no loss for which the insurers would be responsible, and, therefore, the contingency, upon which the appointee, by the terms of the contract, would have a right to claim, could not happen. In general, the assured must have an insurable interest at the time of the damage by fire, as well as at the time of effecting the policy, in order to recover.” If such is the true nature and effect of the contract created by the policy in question, the verdict ought to be set aside.
In the case last cited, there were annexed to the policy certain rules and regulations, which formed a part of it. They expressly stipulated, that no mortgaged estate shall be deemed to be. alienated, until the mortgage shall have been foreclosed; and that any policy, payable to a mortgagee in case of loss, shall continue so payable, notwithstanding any subsequent alienation of the estate. Those rules, regulations, and the policy, together, constituted the contract.
No such rules and regulations, or conditions of insurance, nor any of equivalent import, are annexed to the policy in question. The third condition provides, among other things, that “if the interest in property to be insured be a leasehold interest, or other interest,, not absolute, it must be so represented to the company, and expressed, in the policy, in writing, otherwise the insurance shall be void.”
The fourth, condition declares, that “ policies of insurance, subscribed by this company, shall not be assignable, without the assent of the company, expressed by endorsement made thereon.” The policy, in the body of it, states, that “ the interest of the insured in this policy is not assignable, unless by consent of this corporation, manifested in writing.”
Who is the person, and what is the interest insured? The defendants, in the language of the policy, did “insure Eugene McCarty,” * * “on his three-story brick dwelling-house.” He is, by the policy, declared to be the person insured, and the building *531 insured is declared to be his property. It is his interest, as owner, that is insured. No interest, less than that of absolute ownership, is expressed to be the subject of the insurance.
The plaintiff insists, that the policy recognized the two interests, of mortgagor and mortgagee, and insured both, and that the insurance was as available to the mortgagee as if made to Eugene McCarty, absolutely, and assigned by him, to the mortgagee, as collateral; that, in each instance, the mortgagee derived title to the policy under the mortgagor’s appointment, and, in both, with the express assent of the company.
If both interests, viz., those of mortgagor and mortgagee, are insured, it is not because the terms .of the policy so expressly declare. So far as its express terms state the contract of the parties, they state it to be an insurance of the property of Eugene McCarty, and that he is the person insured. The loss to be paid, if any, is a loss arising from an injury to that interest by fire. There is nothing, in the language of the policy, on which the court can adjudge, that, in legal effect, it is also a contract insuring the interest of the mortgagee, as such, except the provision which declares that the loss, if any, which accrues, under the contract insuring the mortgagor’s interest, shall be payable to the mortgagee.
That provision merely designates the person to whom such loss is to be paid, and shows that he is a person who has an interest in its being so paid.
But a clause in a policy, insuring a person named, and his interest, as owner of the property covered by it, which declares that the loss, if any, shall be payable to a person also having an insurable interest, does not, ex vi termini, convert the policy into one upon the latter interest, nor in any way modify the express terms of the contract, which state, by name, the person insured, and that the subject of the insurance is his property.
This insurance cannot be as available to the plaintiff, as an absolute insurance of Eugene McCarty, and an assignment of the policy, with the assent of the company, to secure the mortgage debt, unless it is, in legal effect, an insurance of the mortgagee, as such, if it also be true that, after such an assignment, the assignee is as effectually protected, against all subsequent acts of the assignor, as he would be by a direct insurance upon his own interest.
We have no doubt, if this policy could be deemed a contract, *532 between the plaintiff and the company, insuring the plaintiff, as mortgagee, that the acts of McCarty, which the defendant offered to prove, would be no bar to a recovery. The same result would follow, under the decisions made by the courts of this state, if it can be regarded as an insurance of the interest of McCarty, and equivalent, in legal effect, to an assignment by him of such interest, to the plaintiff, with the assent of the company, in conformity with the policy, and conditions annexed to and forming a part of it. (Traders' Insurance Co. v. Robert, 17 Wend. R. 631; Tillou v. Kingston Mutual Insurance Co., 1 Seld. R. 405.)
But, for aught that appears, the plaintiff, if he knew of this policy, and was a party to its creation, was willing to receive such security, as a policy, on McCarty’s interest, would furnish, with a provision that, if a loss occurred, for which the company would be responsible to McCarty, the amount of such loss should be paid directly to the plaintiff. He may not have thought there was the slightest risk that McCarty would do any act that could forfeit the policy.
If it is to be deemed to be an insurance of the mortgagee, as such, and of his interest alone, the company, on paying the loss, would be entitled to be subrogated, to the rights of the mortgagee, to the extent of the sum recovered.
But if it is to be deemed to be, what its terms declare, an insurance of Eugene McCarty, as owner, and a loss Occurred, for which the company would be responsible to him, a recovery by, and. payment to the plaintiff, of the amount of the loss, would confer on the company 'no such right.
It is insisted, however, that, whatever consideration these views might, deserve, if the question were open to discussion, they are repugnant to decisions of the court of dernier resort of this state, upon the precise point on which this case turns. If .this be so, they cannot be permitted to influence our decision.
I admit, that I cannot discriminate between the rights of a mortgagee, situated, with respect to an insurer, as the present plaintiff is, and those of a mortgagee, to whom a policy, in precisely the same words, has been assigned, with the express assent of the insurer, evidenced as the policy requires.
The Supreme Court, in the The Traders' Insurance Co. v. Robert, (9 Wend. 404-409,) did decide, that an act, done by the mortgagor, after an assignment of the policy to his mortgagee, with the assent *533 of the insurer, would not avoid the policy, although it was an act which, by the express terms of the contract of insurance, would have put an end to it, if it had not been assigned. It is difficult to perceive why that decision does not, in effect, declare that "such an assignment modifies the original contract. That decision seems to have been based upon the idea, that, “ after the assignment of the policy, Robert, in whose name it was originally taken, had no interest in it, and this was known to the defendants.” * * * “ The rights of the parties are the same, as if the policy declared on, had been given to Francis Bolton, after the mortgage was executed to him.” * * * “ The question presented is precisely the same, because, under the circumstances of this case, the assignee, Bolton, is entitled to the same protection, from this court, as if the policy stood in his name.”
This, in effect, decides, that after the assignment, with the assent of the company, the policy and the assignment, with such assent, together, in legal effect, became a contract of insurance between the insurer and the mortgagee, and that the insurance was thenceforth upon the interest of the mortgagee, as such. (Traders' Insurance Company v. Robert, 9 Wend. 474.) If such is the settled rule in this state, the plaintiff is entitled to recover.
The same case subsequently came before the court for the correction of errors, on appeal from an order of the Supreme Court, staying all further proceedings on the judgment, which order was made, because it was shown to the court, that after the judgment was recovered, the assignee had obtained payment of the moneys due him, by a foreclosure of the mortgage.
Robert v. Traders' Insurance Co., (17 Wend. 631,) the only reported opinion, of the reasons on which the judgment of the latter court proceeded, presents views directly opposed, on some points, to those of the Supreme Court, as to the effect of the assignment upon the original contract.
In that opinion, it is said, that had the company, at the time the policies were executed, “ designed them for Bolton, they would have made him, instead of Thomas Robert, the principal.” (Id. 637.) “I readily concede, that had the case shown that the policies were given to Bolton, to secure him the payment of his mortgage, the payment of the mortgage would have released the company from their liability, for that would have put an end *534 to the risk; the payment of the mortgage, in that case, being the only thing insured.'’ (Id. 639.)
These views, if sound, favor the idea, that this policy, whatever may be the clear meaning of its terms, was, from the time it was executed, an insurance of the interest of the mortgagee, as such. But the judgment of the court did not render it necessary to declare the rule applicable to such a state of facts, for in the same opinion it is expressly stated, that there was not enough in that case to show that the execution of the policies, and of the assignment of them, were concurrent and simultaneous acts; and that the court must construe the policies as it found them, “ insurances of Thomas Robert, to whom the declaration avers they were delivered, and an engagement, on the part of the company, to pay the loss or damage, to him, his executors, administrators, or as signs.” (Id. 637.)
That his assignment of them, with the assent of the company, did not give Bolton an absolute indefeasible interest in them, but “ only a collateral interest, liable to be divested whenever Robert paid the mortgage; and when the company consented to the assignment, they consented to it for the purposes for which it was made, and this consent gave him the right to thus use it, but this could not alter or vary the extent of the liability of the company.
If the extent of the insurer’s liability, under the policy, was the same after the assignment as before, then it is difficult to comprehend, why the doing of acts, which, by the express terms of the contract so assigned, were to put an end to it, and to all liability under it, should not be allowed to have that effect, although done after the assignment was made.
The argument of the Supreme Court, in The Traders' Ins. Co. v. Robert, (9 Wend. 409,) was this:
“ Had the nominal plaintiff, in this case, executed a release to the insurance company, it would have had no effect upon the rights of the assignee; and if he could not directly discharge the right of action which he had assigned, surely he cannot do it indirectly.”
The head of Equity Law, relating to the equitable rights of an assignee of a contract, after notice to the obligor or promissor, is ihere summarily ignored, and an assignment of a contract, by the *535 promissee, or covenantee, is converted into a contract between the promissor and covenantor and the assignee, and that, too, merely by force of the mere fact of an assignment, with notice.
The assent of the company to the assignment is necessary, only for the reason, that, by the terms of the contract, an assignment, without such assent, avoids the policy; and if the policy contained no such clause, an assignment to a party having an insurable interest, and notice of it to the company, would deprive the assignor of all power to release .the right of action he had assigned, by executing a release to the company. Would it, therefore, follow, that because he could not thus avoid the policy, to the prejudice of the rights of his assignee, that the nature of the contract had been changed, and the insurer’s liability essentially varied ?
After an assignment of a contract, and notice of the assignment to the other contracting party, or after it has been made, with the assent of the latter, in cases in which such assent is indispensable to its continuing validity, it is well settled, that no dealings between the original parties to the contract, as payment by the one, or a release by the other, will be permitted to defeat or prejudice the equitable rights of the assignee.
But why all liability of the insurer, under it, should not be de- . termined by acts done by the assured, without the knowledge or participation of the insurer, and against his will, and in fraud of his rights, which, by the express terms of the contract, were to be avoided or omitted, as indispensable conditions to its continuing obligation and validity, is not easily perceived. In a word, on what principle is it, that the mere fact of the assignment of a contract, by one party, with the assent of the other, alters the nature, and legal effect, of the contract itself? divests it of conditions forming an integral part of it, and converts it into a contract between new parties, in relation to new interests, and with new conditions as to continuing liability ?
And yet, notwithstanding the opinion states, that the extent of the company’s liability was not altered, or varied, by the assignment to Bolton, the court held, that a judgment, recovered by the assignee against the company, could be enforced by Robert, for his own benefit, after he had paid the mortgage debt, although he had done acts which would have been a bar to a recovery, in an action brought for his own benefit, if the policy had never been assigned.
*536 This rule would make an assignment of the policy alter the nature and legal effect, of the contract, as between the original parties, and enable the assured to recover for a loss, after having done acts, which would be a bar to any action by him, if no assignment of the policy had been made. “The judgment,” the opinion states, “ was in the name of Robert, and the payment of the mortgage brought back to him the whole interest in the judgment, as effectually as it could have been done by an assignment, had one been drawn up and executed in due form, even had that payment been made voluntarily on the part of Robert.” * * * *
“ Robert having been compelled to advance the amount of the judgment on the mortgage, did not thereby subject himself to have the same defence set up against him, by way of avoidance, which might have been set up, had he continued to be the owner of the policies.” (Id. 640.)
Assuming these views to be sound, then it follows, that the plaintiff is entitled to judgment on the verdict, and that if the plaintiff, before issuing execution, forecloses his mortgage, and collects his mortgage debt, McCarty might then have execution issued, and collect the judgment for his own benefit, if he continued owner of the insured property, although he may have fraudulently set the insured premises on fire, with a view to charge the defendant with the amount of the loss. If a defence may not be set up against the assured, and made available as a ground of relief against paying the judgment to the mortgagor, and for his benefit, whi.ch the contract expressly provides should exonerate the company from all liability to him, it is not apparent how a fraudulent burning of the premises would prevent him from enforcing the judgment, if he should be compelled by the plaintiff to pay the mortgage, before the judgment is collected.
The latter case, it is true, would be one of such gross fraud, that no court would willingly omit to do anything it could properly do, to prevent his enforcing the judgment, for his own benefit, under such circumstances.
But, in the case of Robert v. The Traders' Insurance Co., the court did certainly go so far as to hold, first, that a certain act done by him, after the policy was assigned, which, by the express terms of the contract, would have avoided it, and barred a recovery, had no assignment been made, presented no defence to an *537 action by the assignee. And, second, that the collection of the mortgage debt, out of the mortgaged property, the premises insured, by the assignee, after the judgment was rendered, entitled the mortgagor, even under such circumstances, to collect the judgment from the insurer, for his own benefit.
The first of these points is sufficient to entitle the plaintiif to a judgment on the verdict. In addition to an express adjudication of that point, by the court for the correction of errors, the Court of Appeals seem to have made a decision to the same effect, in Tillou v. The Kingston Mutual Insurance Co., (1 Seld. 405.)
The unqualified language of the opinion, in both cases, is that “ no act of the assured, after the assignment of the policy, with the assent of the insurer, shall impair the rights of the assignee.”
If this policy contained no clause making the loss, if any, payable to the mortgagee, and the policy, with the assent of the company, had, on the day of its date, been assigned to the plaintiff, he would be entitled to recover; on the authority of those cases. Instead of being able to discriminate between the cases, with any advantage to the insurer, the reasoning, in the opinion of the court, in The Traders' Insurance Co. v. Robert, requires us to regard the plaintiff's right to recover, in this case, less questionable, than upon such facts as that case presented.
In the case of the assignment of a policy to a mortgagee of the assured, with the assent of the company, the loss, by force of the assignment, is made payable to the mortgagee. In the present case, it is made payable to the assignee, by the terms of the policy itself.
In the former case it is so made payable by the act of the assured, to which the assurer, assents, which assent is evidenced by an endorsement on the policy. In the latter ease it is so made payable by the act of the assured, in procuring a policy which, by its terms, directs the loss to be paid to the mortgagee, and the insurer assents to it, by engaging, as a part of the contract itself, to pay the loss to him.
Whatever effect may be given to the assignment to a mortgagee, because executed with the assent of the insurer, should be given to a policy containing the provision in question. It is as transparent in the one case as in the other, that the object in view was the protection of the mortgagee, and to the same extent in each case.
*538 If, in the former case, it must be presumed that the assignment was made and assented to, to secure the mortgagee to the extent of his interest, and, therefore, the court will make the transaction protect him to that extent, the presumption is equally strong in a case like the present, and the duty of the court as clear.
In the present case, it was a part of the contract of insurance itself, that the loss, if any, should be paid to the mortgagee. Thus, some intrinsic evidence is furnished that the policy was sought and granted, to protect the mortgagee, as its first and primary object. No such inference can be drawn with respect to a policy assigned to a mortgagee weeks or months after it was issued. In this respect, the claims of the plaintiff to protection are stronger than those of the plaintiffs in the cases referred to, and which we regard as controlling, if any discrimination is to be made between them.
Regarding those decisions as conclusive of the present plaintiff’s right to recover, it follows that he miist have judgment for the amount of the verdict, with interest from the time when the loss, by the terms of the policy, became payable.
Judgment was ordered accordingly.