KEELER VS. NIAGARA FIRE INSURANCE COMPANY.

An allegation in an action on an insurance policy, that the *property* insured was damaged by fire, is a sufficient averment of damage by fire, sustained by the owner.

Where a policy of insurance is issued to A & B as partners, on property owned by them, containing a provision that if the property be "sold or conveyed without the consent of the insurance company obtained in writing on the policy, it shall be void;" a sale and conveyance of A's interest in the property to his partner B, without such consent avoids the policy, but the forfeiture of the policy occasioned thereby may be waived by the insurance company and the policy continued in force.

Where A & B, as partners, obtained a policy of insurance on their mill, &c., one of the conditions of which was, that if the property insured should "be sold or conveyed without the consent of the insurance company obtained in writing on the policy, it should be void," and A sold and conveyed to B his interest in the property insured without such consent, and B, after his purchase, supposing the policy still to be in force and desiring to assign it to C as security for a debt in connection with a mortgage he had given him on the property insured, applied to the company for its consent thereto, and informed its agent of his purchase of the interest of A, and the company consented to such assignment, its general agent writing across the face of the policy the words "the loss, if any, to be payable to C, mortgagee". *Held*, 1. That the forfeiture was thereby waived and the policy continued in force.

2.   B having applied to the local agent of the company for its consent to such assignment of the policy and stated to him the facts in relation to his purchase from A, but the local agent not having power to give consent, applied to the general agent of the company therefor, sending him the policy which was afterwards returned to the local agent for delivery to B, with the words, "the loss, if any, to be payable to C, mortgagee" written across it; such waiver of the forfeiture of the policy is not affected or defeated, by the omission of the local agent to inform the general agent of the sale from A to B.

3.   A loss having occurred after such assignment of the policy to C, it is no objection to the proofs of the loss, that they were made out in the name of B only, and without showing any assignment of A's interest in the property insured.

4.   An assignment of the policy from B, or from A & B to C, was not necessary, after the general agent had written across the policy the words "the loss, if any, to be payable to C, mortgagee."

Where the defense to an action on an insurance policy, is that the insured represented in procuring the policy, that the value of the property was much more than it in fact was; whether there was any misrepresentation as to the value of the property, and if so, whether it was material to the contract, is a question of fact for the jury.

ERROR to the Circuit Court for *Dodge* County.

This was an action to recover the sum of $3000 on an insurance

policy, for damages caused by fire. The policy under which the insurance was effected, was made on the 6th day of February, 1861, to the firm of *Converse & Steveley*, and extended by the duly authorized agent of the said *Niagara Fire Insurance Company*, under which policy the company insured $2,500 on said *Converse & Steveley's* flouring mill and machinery, known as the "Randolph Flouring Mill," and "$500 on grain and flour in store in said mill." At the time of making the policy, *Converse & Steveley* were joint owners of the flouring mill and machinery, and jointly interested in the property insured. The policy contained the usual provisions and conditions contained in fire insurance policies, among which it was provided that "if said property should be sold or conveyed, or if said policy should be assigned without the consent of said company obtained thereon in writing, said policy should be null and void;" and the following conditions were contained in said policy: "if any person effecting insurance in this company shall make any misrepresentation or concealment touching the risk to be assumed, this policy shall be void. And persons sustaining loss or damage by fire, shall forthwith give notice thereof in writing to the company, and as soon after as possible, they shall deliver as particular an account of the loss and damage as the nature of the case will admit, signed with their own hands, and they shall accompany the same with their oath or affirmation, declaring the said amount to be true and just, showing also the ownership of the property insured. And in case of claim for loss or damage on a policy assigned, where there is no actual sale or transfer of the property insured, proof of loss shall be made by the assured, in conformity with the conditions of this policy, in like manner as if no assignment had been made."

The plaintiff alleged in his complaint, among other things, that on the fifteenth day of February, A. D. 1861, said *Converse* sold his interest in said mill and machinery, and his interest in said grain and flour, to said *Steveley*, of which sale

said company had notice, and then as well as on the seventh day of March, A. D. 1861, hereinafter mentioned, waived all advantages, if any they might have derived from the fact of said sale, and consented thereto, and that after the making of said policy, and when the same was in full force, to wit: on said fifteenth day of February, A. D. 1861, said *Steveley* made a conveyance in mortgage to the plaintiff, of the land with the appurtenances thereunto belonging, on which said steam flouring mill and machinery were then situated, and the plaintiff thereby became interested in said mill and machinery to an amount exceeding the sum insured by said policy, and was interested in the same at the time of the fire, of which conveyance in mortgage, the company had notice, and then, as well as on the seventh day of March, 1861, waived all advantage if any they might have had, by reason of said conveyance, and consented thereto, and promised the plaintiff to pay him all such loss as should happen by reason of fire to said property, and that on the seventh day of March, A. D. 1861, while said policy was in full force, said *Converse & Steveley* transferred, assigned, and set over unto the plaintiff and his assigns, all their title and interest in said policy, and all advantage to be derived therefrom, and said company consented in writing on said policy to said transfer and assignment, and said company then in writing also promised to pay him all such sums as should become due from said company by reason of loss and damage by fire, happening to said property. And also, that after the making of the said policy, and while the same was in full force, to wit: on the sixteenth day of March, A. D. 1861, the said *steam flouring mill and machinery, and said grain and flour in store in said mill, sustained loss and damage by fire,* to the amount of more than nine thousand dollars, and to an amount greater than was insured on said property, estimating the same at its true and actual value in cash at the time of said fire. The defendant resisted the payment of said loss because of the misrepresentations of the said *Converse & Steveley* as to the value

of the mill and machinery, whereby the said insurance company were deceived and induced to issue said policy, believing the mill and machinery to be worth the sum of $10,000, when in fact it was worth a much less sum. And because the said *Converse*, on the 14th day of February, 1861, sold and conveyed all his right, title and interest in said mill and machinery and the land upon which the said mill was situated, to said *Steveley*, and that *Steveley* had executed and delivered to the plaintiff the said mortgage upon the whole of said property; that the defendant never consented to the conveyance of said premises by *Converse* to *Steveley*, nor had the said *Insurance Company* ever had any information or knowledge of said conveyance until after said mill was consumed by fire ; that the consent endorsed on the back of said policy, by E. J. Lindsay, the defendant's agent, to the assignment of *Converse & Steveley* to *Augustus S. Keeler*, and the endorsement entered on the face of the policy, to wit: " *The loss, if any, payable to Augustus S. Keeler, mortgagee*," was done with the understanding and belief that said *Converse & Steveley* were then the owners of said mill and machinery, the same as when the policy was issued, and that said *Converse & Steveley* had executed and delivered said mortgage to said *Augustus S. Keeler*, to secure a debt due from said *Converse & Steveley*, and without any knowledge that *Converse* had sold his interest in said property to *Steveley*. The defendant also objected to the payment of said loss to the plaintiff, because neither of the said agents of said defendant had any power or authority to *waive* any forfeiture or annulling of said policy by said conveyance from *Converse* to *Steveley*; and on the ground that the proofs of loss were made by *Steveley*, who deposed that the policy was made to him, whereas the policy was made to *Converse & Steveley*, and the proofs did not show that *Converse* had disposed of his interest in the property insured.

On the trial in the court below, it appeared in evidence that E. J. Lindsay was a duly authorized agent of

the *Niagara Insurance Company*, and made and countersigned the policy under which the plaintiff's claim was made. The policy was introduced in evidence, upon the back of which appeared the following endorsements. " The *Niagara Fire Insurance Company* hereby consent that the interest of *Converse & Steveley* in the within policy, be assigned to *Augustus S. Keeler*. E. J. Lindsay, Agent. March 7, 1861." "For value received, we hereby transfer, assign and set over unto *Augustus S. Keeler*, and his assigns, all our title and interest in this policy, and all advantage to be derived therefrom. Witness our hands and seals, this 7th day of March, 1861. *Converse & Steveley*. [L. S.] On the face of the policy appeared the following: " *The loss, if any, payable to Augustus S. Keeler, mortgagee*."

Andrew Steveley, a witness on the part of the plaintiff, testified as follows: " I am the party *Steveley* named in the policy; I was one of the owners of the insured property at the time the policy was issued; *Paschal Converse* was the other owner.

I purchased his interest in the insured property after the policy issued. I also gave the mortgage upon the property to the plaintiff after the policy issued. The day after the deed and mortgage were made out, I sent the policy to William Lander to present to Mr. Lindsay, defendant's agent. Three days after, I went to the Lake and found Lander had not delivered the policy to Lindsay. I know E. J. Lindsay named in the policy. He was at the mill property before the application was made. I got the policy and took it over to Mr. Lindsay, and stated to him that I had mortgaged the property to *Keeler* and bought out *Converse*, and that I wished the policy altered to pay the loss to the plaintiff. He took down what I said and said he would send it to Whitaker, and send it to me by mail when he received it back. He said that he had not the power to do it. Ten days after, the policy came to me by mail with a letter from Mr. Lindsay. I told Lindsay that I had bought out *Converse* and mortgaged the property to *Keeler*, and wanted

the policy assigned to *Keeler*. When I next received it, the words "Loss if any payable to *Augustus S. Keeler*," were inserted in the body of the pol cy. The consent on the back was also signed by E. J. Lindsay, and was filled up. The assign‐ ment below was filled up by me, as soon as I received it back by mail.

On the part of the defendant, Franklin Whitaker testified as follows: I was and am the general agent of the defendant for Wisconsin. Either on the 17th or 18th of Feb. 1861, I received the policy with a letter from Mr. Lindsay stating that Mr. *Stevely* came to Fox Lake and that he and Mr. *Converse* had dissolved copartnership, and that *Mr. Keeler* had a mort‐ gage on the property, and t ley wished this policy assigned to him; and he said by the blank, he had not the authority to do it and he had sent to me to have it done. I put the pol cy in my drawer and returned it from about the 3d to the 6th of March. I then wrote the clause in the policy: "*The loss if any payable to Augustus S. Keeler, mortgagee.*" At that time I had no knowledge of the conveyance from *Converse* to *Stevely*.

E. J. Lindsay testified on the part of the defendant as fol‐ lows: I countersigned the policy. At the time I signed the consent to the assignment of the policy by *Converse* to *Stevely*, I had no knowledge that *Converse* had sold his interest to *Stevely*. I was only told by *Stevely*, that he and *Converse* had dissolved. He told me so at my store, at Fox Lake, and said he wished the Niagara policy assigned to *Converse*, and he said that Lan‐ der and Banta had consented to the assignment of the Home policy to himself. I told him that it was not in my power to consent, as the blanks on the back of the policy were made to be signed by the secretary of the company. I told him the com‐ pany would consent and I would forward it. I don't know whether I was to return it, or whether it was to be sent directly to him by the company. I made a minute of what he wanted done, and when he started to go out of the store, he said he had made a mistake, and said he wanted the policy

assigned to *Augustus S. Keeler*, as he had a mortgage upon the property. I have no recollection of his saying that *Converse* had conveyed to him. I forwarded the policy, with the statement to Mr. Whitaker, and when I received it, I signed the consent to the assignment, and directed them how to fill out the assignment to Keeler. I don't know exactly how long this was before the fire. I can't say when I first heard that *Converse* had sold to *Stevely*, I think it was after the fire.

It was proved that in the application which was made by *Converse & Steveley* for the insurance, they represented the flour mill and machinery to be worth the sum of $10,000 at the time said insurance was effected, and that the mill was owned and operated by them, and that no other person was interested in the property.

The defendant gave considerable evidence to show that the value of the property insured was a considerable less than $10,000, when the application for insurance was made.

The defendant offered to prove what power Lindsay had as agent, and that he had no power to make good, a policy once made void, but the evidence offered for that purpose was excluded.

It appeared that the proofs made of the loss were made in the name of *Steveley* only and did not show any transfer of the interest of *Converse* in the property insured, to him, and he stated therein that the policy was issued to him *Steveley*, and the proofs were objected to by the company on this account.

The counsel for the defendant asked the court to charge the jury that the sale and conveyance from *Paschal Converse* to *Andrew Steveley*, of his title and interest in the property insured, rendered the policy upon which this action is based, void; and your verdict must therefore be for the defendant, inasmuch as no proof has been introduced or offered to show that the defendant ever consented in writing to this sale or conveyance. This consent the plaintiff was bound to prove in order to maintain this action. But the court refused to so charge

the jury. And the counsel for the defendant further asked the court to charge the jury that the words "the loss if any payable to *Augustus S. Keeler*, mortgagee," in the policy, are not sufficient to enable him to maintain the action. This is not an insurance of the mortgage interest of *Keeler*, but on the contrary, was an insurance of the property mortgaged. The plaintiff cannot therefore maintain this action, notwithstanding these words in the policy, unless the assured—*Converse* and *Steveley* can do so. This they could not do, for the reason that *Converse* had no interest in the property at the time it was burned ; and without an interest he could not sustain any loss, and without loss, an action cannot be maintained on the policy." But the court refused to so charge the jury. And also "if you are satisfied from the evidence that this property was not worth ten thousand dollars into two or three thousand dollars, and that the company would not have issued the policy, had they or their agent known that the property fell this much short of the stated value of ten thousand dollars, your verdict must be for the defendant. But the court refused to so charge the jury.

The court charged the jury, that if there was such misrepresentation of the value of the property insured, as would naturally have influenced the company, and without which they would not have issued the policy ; then the plaintiff could not recover; that if *Steveley* did not notify the agent Lindsay, of the sale from *Converse* to himself, and of the. mortgage to *Keeler*, the plaintiff, and request the agent to give the consent of the company to such sale and mortgage and to the assignment of the policy to *Keeler*, then, although there has been no misrepresentation, the plaintiff cannot recover in this action for the reason that the condition of the policy makes the same void on account of such sale without the written consent of the company; so that it comes to this, if you find either of these questions, or both of them in favor of the defendant, then your verdict must be for the defendant. If there was no material misrepresentation, and the company were notified through

their agent, Lindsay, of the sale from *Converse* to *Steveley*, and after such notice delivered to the plaintiff, or to *Steveley* for the plaintiff, (which is the same thing), the policy with the words written across the body: " the loss, if any, payable to *Augustus S. Keeler*," then the plaintiff is entitled to recover." " That the sale by *Converse* to *Steveley* is such a sale as makes it necessary to notify the defendant and procure their assent thereto in writing, and the company *have not*, by writing in the policy after the sale, the words, " the loss, if any, payable to *Augustus S. Keeler*," or by signing the consent in the policy to the assignment, thereby necessarily admitted notice of such sale; that the plaintiff must prove actual notice given to Mr. Lindsay, the company's agent, of the sale by *Converse* to *Stevely* and the mortgage to *Keeler*; and that if the jury believe that *Steveley* did notify the agent Lindsay, of his buying out *Converse* and making the mortgage to the plaintiff as testified to, that is sufficient notice. The policy does not require *written* notice to the company, and if the agent, after such notice, delivered the policy so written upon and endorsed to the plaintiff, that is a sufficient written consent to such sale, mortgage and assignment of policy."

Such other matters as are material to the decision, are stated in the opinion of the court.

Verdict and judgment for the plaintiff.

*Knowlton & Jackson*, for plaintiff in error.

1. Nowhere in the complaint is it alleged that the plaintiff or any other human being sustained *loss* or injury by means of fire. How inanimate property can sustain damage, is not easy of solution. The allegation should have been that the said mill and machinery, and said grain and flour in store therein, to wit: (one thousand bushels of wheat, &c.,) were burned down, consumed and destroyed by fire, whereby the said *plaintiff* then and there sustained damage and loss.

Is it material in a complaint based upon a fire policy, to state that the plaintiff has sustained injury or damage by fire

or the destruction or injury of the insured property? If so, then the complaint in this action is fatally defective. If not, then it is clear that a person may maintain an action without showing that he has sustained damage or injury. This would contravene the first principles of pleading and of law. It is not possible to change a statement that *property has sustained* damage or loss, into a statement that the *plaintiff has sustained* damage by the burning of property.

The allegation that by the mortgage to *Keeler*, he acquired an interest in the mill and machinery, for the purposes of this action, is perfectly useless. *Carpenter vs. The Washington Insurance Co.*, 16 Peters, 495; *Columbia Ins. Co. vs. Lawrence*, 10 Peters, 507, 512.

2. The court erred in giving instructions that notice of the sale from *Converse* to *Steveley*, given to the agent Lindsay, was equal to a written consent of the company endorsed on the policy. No written consent of either the *sale* or *conveyance* of the property by *Converse* to *Steveley* was ever obtained from the company. A notice that a sale had been made could be of no avail under the policy, unless the company consented to the sale and transfer in writing. It is obvious, that written consent of the company was necessary to two things: 1st. To a sale or conveyance of the property. 2d. To an assignment of the policy. One of these consents cannot be substituted for the other. Each stands upon its own bottom. These provisions are salutary and protective. The company might well be willing to insure property owned in common by A & B, out of its confidence that A was a very prudent, careful and watchful man, by means of which the hazard would not be great. B might be the very reverse, and to such an extent that the hazard would be so great that the company would not take any risk upon the property, were he the sole owner. A conveyance from A to B would therefore place the company in as great peril as to loss, as though the whole property were conveyed to an entire stranger, who might be careful or careless.

Whether the owner of the property is the one or the other, is what the company wish to know before assuming the risk. The like reasoning applies to an assignment of the policy. To this end, the assured are admonished in express words, that to each of these acts, the consent of the company must be endorsed upon the policy in writing, or that the same shall be void. With this admonition, the company protects itself against a risk which it does not wish to take. The cases in 2 Comst., 3 Denio, 18 Missouri, 30 Penn. St. R., and 16 Md., are all cases of sales from one owner in common to another. In *Hobbs & Henly vs. Ins. Co.*, 1 Sneed, (Tenn.) 441, where the policy simply provided, "that it shall become void by *assignment* without the consent of the underwriters." it was held that no recovery could be had for that portion of the insured property which, before loss, had been transferred by one partner to another, although the policy was in force, it not having been assigned. In other words, it was held, that the portion of property thus assigned by one partner to the other, ceased to be covered by the policy, upon the transfer of title being made. The following cases will show the effect of an assignment of a policy before loss, and of the words, " the loss, if any, payable to A B ": *Fogg vs. Mut. Ins. Co.*, 10 Cush., 337 ; *Carbis, in re Croggan*, 4 Dea & Ch., 354 ; *Smith vs. Saratoga Mut. Ins. Co.*, 1 Hill, 497, affirmed in 3 Hill, 508 ; *Dey vs. Poughkeepsie Ins. Co.*, 23 Barb., 623 ; *Grosvener vs. The Atlantic Fire Ins. Co.*, 17 N. Y., 391, 395.

3. As to the extent of the powers of Lindsay & Whittaker, as agents of the company, the appellant offered to prove what power Lindsay had as agent, and that he had no power to make good a policy once made void. We contend that neither Whittaker nor Lindsay had any power whatever to waive a forfeiture of a policy, nor to make good a once void policy. There can be no doubt the defendant had the right to show what power had been conferred upon these agents. *Steveley* knew that Lindsay was an agent of limited power, because

when he took the policy to him to get the consent of the company, Lindsay told him that he had not the power, and that the blank form required the signature of the secretary of the company. It is idle for him to contend that he had a right to consider him a general agent. *Dawes vs. North River Ins. Co.*, 7 Cowen, 462; *McEvers vs. Lawrence*, 1 Hoff. Ch., 172; *Vose vs. Eagle L. & H. Ins. Co.*, 6 Cush., 42; *Wilson vs. Gennessee Mut. Ins. Co.*, 4 Kernan, 418; *Chase vs. Hamilton Mut. Ins. Co.*, 22 Barb., 627; *State vs. Citizens' Mut. Fire Ins. Co.*, 13 Gray, 79; *Baxter vs. Chelsea Mut. Fire Ins. Co.*, 1 Allen, 294; *Hough vs. City Fire Ins. Co.*, 29 Conn., 10.

4. Another error was committed in allowing the plaintiff to read in evidence the preliminary proofs made out by *Steveley*. There was a wide departure from the requirements of the policy. That required the proofs to be made by the assured, when there had been no actual transfer of the property insured, and of consequence when there had been, then by the alienee and assignee of the policy. The assured being *Converse* and *Stevely*, both should have joined in making the proofs. The company might have confidence in the one who did not join, and have none at all in the one who made the proofs. The noncompliance with the provisions of the policy in regard to making proof of the loss, could be insisted on to defeat the action. *Boyle vs. Mut. Ins. Co.*, 7 Jones L. R., N. C., 373; *Smith vs. Haverill Mut. F. Ins. Co.*, 1 Allen, 297; *Spring Garden Mut. Ins. Co. vs. Evans*, 9 Md., 1; *Mason vs. Harvey*, 8 Wel., Hurl & Gor., 819; *Welcome vs. People's Eq. Mut. F. Ins. Co.*, 2 Gray, 480; *Franklin F. Ins. Co. vs. Hamill*, 6 Gill, 87; 8 Rob. La. R., 384; *Harris vs. Protection Ins. Co.*, 1 Wright, 548.

*Smith & Ordway*, for defendant in error.

1. The case at bar shows no alienation nor sale or conveyance of the property insured. It was only a transfer of interest from one co-owner to another. No stranger is introduced, no addition to the number of the insured is made. The insurer is presumed to be satisfied with each of the owners.

2. A sale by one of the owners of his interest in the premises to the other owner is not such an alienation as will avoid the policy. Angel on F. & L. Ins., 197, 266; *Tillou & Kingston vs. Mutual Insurance Co.*, 7 Barb., 570; *Stowell vs. Jefferson*, 5 Bosw., 247; Parsons' Mercantile Law, 533; *Wilson vs. Genessee Mutual Ins. Co.*, 16 Barb. 115 We insist that the transfer from *Converse* to *Steveley* was consented to in writing by the appellant. The insertion in the body of the policy the words: "Loss if any payable to *Augustus S. Keeler* mortgagee," by Franklin Whittaker, agent of the company, is equivalent to a written consent. No form of consent is required, *Conover vs. Ins. Co.*, 1 Coms., 292. An Insurance Company by their agent may waive a condition. *Ames vs. N. Y. Union Co.*, 4 Ker., 253. It was enough for us, that we procured from the regular agent what was intended on all hands to be, and in effect was, an assent to the transfer of the property, the execution of the mortgage, as well as the assignment of the policy. The agents having power to make binding contracts the company are bound by their acts. *Gloucester vs. Howard Ins. Co.*, 5 Gray, 497; *Rightberry vs. N. Am. Ins. Co.*, 23 Wend., 18. 3. The proofs of the loss are sufficient and fully comply with the condition of the policy. Any person interested may make formal proofs of loss. It may be given by the assignee of the policy. *Corning vs. LeRoy*, 9 Wend., 163. The question of waiver was for the court and not for the jury. *Miller vs. Eagle*, 2. E. D. Smith R., 286; *Parkinson vs. McKim*, Burnett's Wis. Ter. Rep., 1842—60.

*By the Court*, PAINE, J. This was an action on an insurance policy, by which a flouring mill was insured. The plaintiff in error objects among other things, that the complaint was fatally defective in not showing that the owner of the property had sustained any damage. The complaint shows that the mill insured, was damaged by fire to an amount exceeding nine thousand dollars. But the counsel contends that this is not

equivalent to an allegation that the owner was damaged, and that nothing but damage to the owner can be recovered in this action, and he says " how inanimate property can sustain damage is not easy of solution."

Whatever merit this criticism might have, if the complaint were to be judged by the strictest rules of metaphysical precision, we are still inclined to think, that " under the code," the pleading must be held sufficient, Notwithstanding the difficulty in the mind of counsel, the idea prevails quite generally that inanimate property may be damaged. It is very common to hear men speak of damaged wheat, damaged flour, damaged cargoes, &c. If a hurricane occurs they say that houses were damaged; of a freshet, that the crops and bridges were damaged; if a collision on the railroad or lakes, that the engine or boat was badly damaged, &c. The same language has also inadvertently, no doubt, crept into this policy. In the ninth condition of insurance there is a provision in regard to cases where "merchandise or other personal property is partially damaged." So in the tenth, it is provided that in the " case of any loss or damage to the property insured, it shall be optional with the company to replace the articles lost or damaged," &c. And the idea is also very common, that in such cases the loss to the owners arises entirely from the fact that their inanimate property is damaged. However inaccurate these notions and forms of expressions may be, yet they prevail so extensively that we are satisfied that the rules of pleading should be adapted to the common understanding of men, and that where a complaint on a policy avers that the property insured was damaged by fire, we must hold that it sufficiently shows a loss to the owner.

The policy was originally issued to *Converse & Stevely* as partners. It provided that if the property should be " sold or conveyed without the consent of the company obtained in writing on the policy, it should be void, " *Converse* sold his interest to *Stevely* without such consent. And the question

was quite fully discussed, whether such a sale by one partner to the other was within the provision. The weight of authority seems to hold that it would be, though there are cases containing intimations to the contrary. And the same reasons which would induce a company to protect itself against a sale to strangers, may exist in a sale from one partner to another. In making contracts of insurance, the company has regard to the habits and character of the other contracting parties. If a firm is composed in part of prudent careful men, a company may be willing to insure the property of the firm, though the others were of an entirely different character. But if, after this was done, those who were prudent and careful, could by selling out to the others, leave the company exposed to the unguarded negligence of the latter, it might suffer the same evil, as from a sale to strangers. We hold, therefore, that the sale by one partner to the other was within the provision, and that the company might have avoided the policy on that ground if it had seen fit.

But if after such sale, the company knowing the fact, should see fit to waive the forfeiture, and continue the policy in force, it could undoubtedly do so. And if *Steveley*, after he had purchased the interest of *Converse*, supposing the policy to be still in force, and desiring to assign it to this plaintiff as security in connection with a mortgage on the property, should apply to the company for its consent, communicating the fact that he had bought out the interest of his partner, and the company should then consent in writing to the assignment, and that the loss, if any, should be payable to the mortgagee, there can be no doubt that this would be a waiver of the forfeiture and continue the policy in force. That the agent of the company did consent to this, was shown on the trial, but the counsel for the company sought to show what were the powers of Lindsay, the local agent at Fox Lake, for the purpose of claiming that he had no authority to consent. But we think he was properly denied the right to do so, for the

reason that the answer admitted that both he and Whittaker were agents of the company, and that they had given such consent. And instead of alleging that the consent was inoperative for the reason that they had no authority to give it, it places the defense entirely upon the ground that neither of them had at the time, any knowledge of the fact that *Steveley* had bought the interest of *Converse.* This clearly implies that neither agent exceeded his authority, and presents the single question whether the necessary information was communicated by *Steveley*, to make their consent amount to a waiver of the previous forfeiture. This question was fairly left to the jury, under proper instructions, that their consent in the manner it was given, would continue the policy in force, if those facts had been previously communicated to them. And if Lindsay had authority to give consent, as the answer clearly implies and as the proof shows he did have at least, though not when first applied to; if *Steveley* told him all that was necessary, it was immaterial whether he communicated anything to Whittaker, the general agent, or not, Lindsay having eventually received the necessary authority to act upon the application, his action upon full knowledge of the facts, amounts to a complete waiver. And this effect would not be defeated, even if it were shown that he did not communicate to the general agent the fact of the sale by *Converse* to *Steveley.* The act of such a local agent after his authority was extended, would have full effect according to such extended authority, even though he may not have communicated to his principal everything which the latter might have deemed material in determining the question whether the authority should be extended or not. Parties dealing with him in good faith, and giving him all information they were bound to give, would not be prejudiced by any failure of his, to state everything material, in applying to have his powers enlarged.

But even if the waiver depended entirely on the consent given by the general agent, which was given by altering the

body of the policy so as to provide that the loss, if any, should be payable to the plaintiff as mortgagee, there is great reason for holding that the company would still be bound, if the necessary facts were communicated to Lindsay, the local agent, he having undertaken to procure consent from Whittaker. These companies are located generally in other states. They send out their agents to solicit persons to take policies. Persons dealing with them communicate from necessity, almost entirely with these agents. And where all material facts are communicated to them, and they undertake the desired action of the company upon these facts, there is much reason for holding the company bound by their knowledge of the facts. There are cases that have gone great lengths in relieving companies from responsibilities for the acts or knowledge of their agents; but we are certainly not inclined to extend such a rule any further than it can be shown to be inflexibly established by authority. Not that these companies, any more than others, are to be held responsible for the acts or mistakes of those who are not their agents; but they should, like everybody else, be held responsible for the acts or knowledge of those who are their agents for all purposes of benefit to themselves, and whose acts are only sought to be repudiated, when some mistake has been committed, through which a loss might happen. If they deal habitually with people throughout the country, through these local agents, every person should be entitled to assume that such agents are authorized to receive communications material to their contracts until notified to the contrary. *Hough vs. City Fire Ins. Co.*, 29 Conn., 10.

The objection taken to the preliminary proofs is disposed of by the decision just made. If the company by proper consent had revived the policy after *Steveley* acquired the entire interest in the policy, the facts that the proofs were made on behalf of him alone, and that they do not show any assignment of interest from *Converse* to him, constitutes no objection. These facts had been known to the company long before, and it was

wholly unnecessary to explain them in the preliminary proofs. Nor does the fact that *Steveley*, after the dissolution executed the assignment in the name of *Converse & Steveley*, defeat the plaintiff's right to recover. There does not seem to have been any necessity for an assignment, after the company by consent of all concerned, altered the policy so as to make the loss, if any, payable to the plaintiff as mortgagee. His right then appeared on the face of the instrument. And we can see no reason why he might not maintain the action on such a policy without showing any assignment at all. *Grosvenor vs. Atlantic Fire Ins. Co.*, 5 Duer, 517.

It was also claimed that the policy was avoided by false representations made as to the value of the mill at the time it was insured. The judge submitted this question to the jury, telling them that if there was "such misrepresentation of the value of the property insured, as would naturally have influenced the company, and without which they would not have issued the policy, then that ends the case." This was a proper instruction, and all that the company could ask. But they asked a special instruction to the effect that if the jury should find that the property was not worth ten thousand dollars into two or three thousand dollars, and that the company would not have issued the policy had they or their agent known that the property fell this much short of the stated value of ten thousand dollars," their verdict should be for the defendant. This the court declined to charge, and we think properly enough, although the proposition is correct in itself. It was properly refused for the reason that it would have been charging upon matters of fact, to give it. The court having correctly told the jury that any misrepresentation material to the contract, would avoid the policy, rightly left it to them to say what was material. He was not bound to specify what particular difference between the real and represented value would or would not have been material. That was for the jury to

determine, and it was not a matter of law, about which the court was bound to charge.

We have not noticed in order all the points and exceptions of the defendant, but only those which seemed most material. We have discovered no error for which the judgment should be reversed; it is therefore affirmed, with costs.