CHARLES BATCHELOR vs. THE PEOPLE'S FIRE INSURANCE COM-
PANY.

Personal property insured by the defendants was sold by the insured during the
life of the policy to the plaintiff, and the policy delivered to him. · The policy
contained a condition that if any change took place in the title to the
property by transfer or otherwise, the policy should become void. The plain-
.tiff, to secure the protection of his interest by the insurance, carried the policy
to an insurance broker to have whatever was necessary for the purpose done.
The broker wrote in pencil on the back of the policy, "Privilege to use kero-
sene oil for lights. Loss, if any, payable to Charles Batchelor. Transfer,"
and sent it to the defendants. The secretary of the company read the memo-
randum, and wrote in the policy the following: "July 19th, 1867. Privilege
to use kerosene oil for lights. Loss, if any, payable to Charles Batchelor."
This he signed in his official character, affixed to the policy a fifty cent reve-
nue stamp, (required by law for a new policy, but not necessary for the en-
dorsement actually made,) and sent the policy back to the broker, who deliv-
ered it to the plaintiff. Before the term of the insurance expired the entire
property was burned. Held—1. That the word "Transfer," in the pen-
cil memorandum, was an important word, having a distinct meaning, and
must be regarded as conveying notice to the defendants of whatever it would
in the circumstances reasonably import. 2. That the only sensible meaning that
could be given to it in its connection, and in view of the use of the same term
in the condition of the policy, was, that the property had been transferred to
the plaintiff. 3. That the defendants, by returning the policy to the plaintiff
with the loss made payable to him, and by affixing the stamp required for a
new policy, were to be regarded as having assented to the transfer of the prop
erty to the plaintiff and made the policy an operative one for his benefit.
The plaintiff offered to furnish the defendants with formal proof of the loss, but
they informed him that· they denied his right to recover for the loss and that
they should not receive any proof made by him as sufficient. Held to be a
waiver of the proof.

ASSUMPSIT on a policy of insurance ; brought to the Supe-
rior Court in Middlesex county. The facts were found by a
committee.

The policy was originally made to one Henry N. Wilson,
and was upon a large amount of furniture in a hotel. It was
issued May 22d, 1867, and was for one year. The property
insured was totally destroyed by fire on the 31st of October,
1867. The policy contained the following condition: "In
case any change takes place in the title or possession of the
property, whether by sale, legal process, judicial decree, vol-

untary transfer or conveyance ; or the policy is assigned without the consent of the company endorsed hereon ; or if the assured is not the sole and unconditional owner of the property insured, by a sole, unconditional and entire ownership and title, and is not so expressed in the written portion of the policy ; * * * * then, and in every such case, this policy shall be void."

The whole question in the case arose from the sale of the insured property by Wilson to the plaintiff, on the 12th of July, 1867, the facts with regard to which, and to the action of the defendants thereupon, are fully stated in the opinion.

The committee found that there was no established and uniform custom among insurance companies, or persons engaged in the insurance business, relative to the mode by which the insurers of property are advised of a transfer or assignment of the property insured and requested to have the new interest acquired by such transfer or assignment protected ; and that there was no uniform custom among insurance companies relative to the mode of protecting the interest of the new owner in the property insured ; also that there was no custom or usage among insurance companies or persons engaged in the insurance business giving a technical meaning to the words of the pencil memorandum indorsed on the policy.

The committee also found that the plaintiff, immediately after the fire, gave notice to the defendants of the loss, and within the time required in the policy offered to make proof of loss in the manner specified in the policy, but that the defendants thereupon denied his right to make any proof of loss under the policy, and informed him that the company would not receive any such proof as sufficient, if made by him, upon the alleged ground that he was not the party insured in the policy, and that no proof of loss would be received unless made and presented by Wilson, who was the only party the defendants would recognize as the party insured under the policy.

Upon the facts thus found the case was reserved for the advice of this court.

*C. R. Ingersoll,* for the plaintiff, cited *Hooper* v. *Hudson River Fire Ins. Co.,* 17 N. York, 424, 428; *Benjamin* v. *Saratoga County Mut. Ins. Co.,* id., 415; *Wolfe* v. *Security Fire Ins. Co.,* 39 id., 49; *Solmes* v. *Rutgers Fire Ins. Co.,* 42 id., 416; *Shearman* v. *Niagara Fire Ins. Co.,* 46 id., 526; *Bates* v. *Equitable Ins. Co.,* 10 Wall., 33; *Northrop* v. *Mississippi Valley Ins. Co.,* 47 Misso., 435; *Sheldon* v. *Connecticut Mut. Ins. Co.,* 25 Conn., 207; *Rathbone* v. *City Fire Ins. Co.,* 31 id., 193.

*C. E. Perkins* and *Calef,* for the defendants.

1. The sale of the insured property made the policy void. The condition is, that any change in the title or possession of the property avoids the policy. The company has not waived this breach, or done anything by which the policy, which was made void, was revived as a new policy with the plaintiff. What has the company done? The secretary wrote inside the policy these words, " Loss, if any, payable to Charles Batchelor." It is well settled that, *as a matter of law,* such an expression is a mere direction as to who should receive the money in case of loss. No knowledge of or assent to an assignment or sale can be inferred from it, or any waiver of a breach arising from such assignment or sale. *Birdsey* v. *City Fire Ins. Co.,* 26 Conn., 165; *Woodbury Savings Bank* v. *Charter Oak Ins. Co.,* 29 Conn., 374; *Bates* v. *Equitable Ins. Co.,* 10 Wall., 33; *Fogg* v. *Middlesex Mut. Ins. Co.,* 10 Cush., 337; *Hale* v. *Mechanics' Mut. Ins. Co.,* 6 Gray, 169; *Loring* v. *Manufacturers' Ins. Co.,* 8 id., 28; *Grosvenor* v. *Atlantic Fire Ins. Co.,* 17 N. York, 391; *Bidwell* v. *Northwestern Ins. Co.,* 19 id., 179. It may however be claimed that, as a matter of *fact,* the act of the secretary was a waiver. But this court will not draw an inference of fact. *Cook* v. *Weed,* 38 Conn., 470. Waiver is always a question of fact, except when the construction of a written instrument is in question. When the question depends on acts, and especially on the *intention* with which acts are done, or on the existence of *knowledge* of all the material circumstances, it is purely a question of fact for the jury. *Fitch* v. *Woodruff & Beach*

*Iron Works*, 29 Conn., 91; *Union Bank* v. *Magruder*, 7 Peters, 287; *Hill* v. *Hobart*, 16 Maine, 164; *Davis* v. *Western Massachusetts Ins. Co.*, 8 R. Isl., 277; *Fraynor* v. *Johnson*, 1 Head, 51; *Coursin* v. *Pennsylvania Ins. Co.*, 46 Penn. S. R., 323; *Finley* v. *Lycoming Mut. Ins. Co.*, 30 id., 311. It is clear that the *legal effect* of the entry is not a waiver, and any question beyond that depends on the *knowledge* and *intention* of the secretary when he made the entry. It is not found that he had any knowledge of the breach or intention to waive it. In the absence of such finding it must be held that there was no such knowledge or intention. It is not claimed that, as a matter of fact, there was any such, but that the court will infer them from the fact that the word "transfer" was written in pencil on the policy, and that the secretary saw it. But the knowledge which is required must be *actual*. It is not enough that the company had reasonable means of procuring the knowledge, or that they had information which might have put them on enquiry. *Hoxie* v. *Home Ins. Co.*, 32 Conn., 40; *Smith* v. *Saratoga County Mut. Ins. Co.*, 3 Hill, 508, 512; 2 Am. Lead. Cas., 908. The word "transfer," of itself, gives no knowledge. It may mean many things, and it would be great injustice to *impliedly* affect a company with knowledge of so important a matter as the sale of the insured property, by mere proof that the secretary saw this word in lead pencil on the back of the policy.

2. The assignment of the policy avoided it. There can be no question but that it was assigned; and that this assignment was not assented to in writing on the policy, as required. It was not necessary that there should be a *written* assignment; a verbal one, and a delivery of the policy, is sufficient. 1 Parsons Cont., 197, note *e*. If the policy requires an indorsement in writing, no action at law can be sustained without it. *Carpenter* v. *Providence Ins. Co.*, 16 Peters, 495, 512; *Barrett* v. *Union Mut. Ins. Co.*, 7 Cush., 175; *Martin* v. *Manufacturers' Ins. Co.*, 10 Gray, 501. If the company had agreed to make an indorsement, a court of equity may compel them to perform their agreement, but a court of law cannot. But no such agreement

was made; all that can be claimed is that the company *waived* this requirement. The same reasoning as to waiver, applies to this breach as to the foregoing one. No inference of waiver, as a matter of law, can be drawn from the entry made. "The terms of every written instrument are to be understood in their plain, ordinary and popular sense, and where the language of an instrument has a settled legal construction, parol evidence is not admissible to contradict that construction." *Woodbury Savings Bank* v. *Charter Oak Ins.. Co.*, 29 Conn., 374. The words used here have a "settled legal construction," and this court will not infer a waiver in fact. It follows, therefore, that as the policy became void and the breaches have never been waived, no recovery can be had.

3. The evidence as to the request to the insurance broker, the purpose for which he made the memorandum on the pol icy, and what he said to the plaintiff, are clearly inadmissible. These acts and statements could not affect the rights of the plaintiff in any way. The broker was not an agent of the company; he was acting only as an agent of the plaintiff. like any other agent whom he might employ.

FOSTER, J. The defendants issued a policy of insurance to Henry N. Wilson, covenanting, in consideration of a certain premium paid, to indemnify him against such loss or damage by fire as might occur to the property specified in said policy, not exceeding the sum insured, nor the interest of the assured in said property, from the 22d day of May, 1867, to the 22d day of May, 1868. That this was a valid contract, and that the liability of the defendants to said Wilson attached under it, according to its true legal intendment, does not seem to be disputed. On the 12th of July, 1867, all of said insured property was sold by said Wilson to the plaintiff in this suit; the lease of the hotel previously occupied by him, containing the same, was transferred to the plaintiff by said Wilson, and said policy of insurance was delivered to the plaintiff with intent to vest the same in him; no written assignment of said policy being made. On the 31st of Oc-

tober, 1867, the insured property was wholly consumed by fire and lost to the plaintiff, accidentally, without fault on his part, and not chargeable to any cause excepted by said policy. All the conditions and stipulations contained in said policy, to be kept and performed by the assured, were fully observed and kept by the plaintiff, up to said 31st day of October, 1867. The value of the insured property destroyed, over and above all insurances, was more than $3,000. The defendants refused payment of the policy because of the sale and transfer of the property ; denying that they were ever notified, or that they ever consented to the same ; the usual clause making the obligation void for such a cause, being inserted in this policy. A close examination of this record therefore, touching this question, becomes important.

On the 15th of July, 1867, three days after the purchase of this property and its transfer to the plaintiff, he took the bill of sale, the assignment of the lease, and the policy of insurance, to Messrs. Curtis & Dresser, insurance brokers, through whom Wilson had obtained this policy of insurance ; and informed them of the changes made, and requested them to have the policy so indorsed as to protect his interest. Said Curtis & Dresser, for the purpose of advising the defendants of said changes, and what was required, indorsed upon the policy a memorandum in pencil in these words : " Privilege to use kerosene oil for lights. Loss, if any, payable to Charles Batchelor. Transfer." The policy was then forwarded to the defendants, who duly received the same. The secretary wrote in the policy, " July 19, 1867. Privilege to use kerosene oil for lights ; loss, if any, payable to Charles Batchelor ;" and signed the same officially. He also affixed two twenty-five cent revenue stamps, and returned the policy with these additions to Curtis & Dresser, who delivered it to the plaintiff with the assurance that it had been so made as to protect his interest.

We think the evidence of what occurred, between the plaintiff and Curtis & Dresser, was, under the circumstances, admissible in the case ; and probably no reasonable doubt can be entertained, in view of that testimony, but that the

plaintiff, in good faith, supposed that every thing necessary to be done, to effect a change in the policy, had been done; and that the policy, in his hands, afforded the same protection to him, as, before the sale and transfer, it had afforded to Wilson, to whom it was originally issued. The question whether the defendants are to be held to this liability remains to be considered, and that must depend upon the judgment which the law pronounces upon the facts brought home to the notice of the defendants; whether knowledge of the transfer of this property is to be imputed to them, and whether, by anything afterwards done, they renewed or revived that policy, so as to make it available to the plaintiff.

It is certainly to be regretted that the brokers who undertook to do this business did not, in terms, inform the defendants what had been done, and what it was desired that they should do. A single line of writing, requiring perhaps a moment's time, might have saved an expensive litigation, now protracted into years. But we must decide the case as it is presented.

Looking at the memorandum on this policy, which came to the hands of these defendants on or before the 19th of July, 1867, by itself alone, as the defendants looked at it, or in connection with the facts and circumstances proved to have surrounded it, in effect it reads thus : " Permission is wanted to use kerosene oil for lights; loss, if any, to be payable to Charles Batchelor,—he is now the owner of the property." We cannot give effect to each of the words found in this memorandum, and each word must, if possible, be considered as significant, and extract from them, taken together, less than this amount of meaning. That it was the purpose of Curtis & Dresser, by their communication to the defendants, to express all that we now repeat, is directly found. The purpose of those who made the communication should not, perhaps, be disregarded, when considering it; but it would be unjust to the defendants to charge them with knowledge of that purpose or intent any further than such reasonable expression of it was given as to make it intelligible. That the purpose was to have the policy so changed that kerosene oil

Batchelor *v.* People's Fire Ins. Co.

might be used for lights, and that the lo~ , any, should be made payable to Charles Batchelor, resent plaintiff, is sufficiently clear. There remains the word " transfer," quite too important a term to be passed over as without meaning. What effect shall be given to it? We find the same term used by the defendants themselves in this same policy. That instrument provides among other things, that "if any change takes place in the title or possession of the property, whether by sale, legal process, judicial decree, voluntary transfer or conveyance, without the consent of the company, written hereon, then &c., this policy shall be void." With the aid which the use of this term in this clause of the policy affords us, when inquiring after its import, and that this source is a legitimate and proper one for the purpose cannot be disputed, we find no difficulty in deciding that the legal effect of this memorandum was to give notice to the defendants that the title to the property insured had been changed.

We are confirmed in the correctness of this opinion by the answer given to the insurance brokers by the defendants, by the indorsement on the policy made by their secretary, and by the return of the policy. The use of kerosene for lights, and the payment of loss, if any, to Charles Batchelor, the plaintiff, seems to have been specifically consented to. No notice in writing was taken of the word " transfer," but the policy was returned, and additional revenue stamps, such as were required by law for a contract of insurance, were affixed to the indorsement. These were significant acts. That the defendants did not mean to avail themselves of their option, and cancel the policy, as they might have done, is demonstrated by their returning it. They returned it with the intent, as we must suppose, that it should be delivered to the party who held the interest in it. It was so delivered. He trusted it as an indemnity to himself, and the defendants must have anticipated that he would do so ; for the delivery, otherwise, was a deception and a snare. A party must be held to perform a contract as he allowed his co-contracting party to understand it ; as he supposed that that party did understand it. Why did the defendants affix

to their indorsement the additional revenue stamps? If they intended simply to give their assent to the changing of the person to whom the loss, if any, should be made payable, an event constantly occurring, the object being to give security to a mortgagee or other creditor, these stamps would have been entirely unnecessary. Corporations, no more than individuals, are prone to pay taxes not called for by law. But here was the word " transfer," over and above the request that the loss, if any, might be payable to Batchelor, and whether that word was understood as notice that the property insured had been sold, or as a request that the policy should be transferred to Batchelor, the result was the same. In either event the existing policy was annulled, and by the act of June 30, 1864, " to increase duties on imports and for other purposes," a tax of fifty cents was imposed upon every policy of insurance, made or renewed, where the premium exceeds, as it did in this case, the sum of fifty dollars. Affixing these revenue stamps, and delivering the policy, under these circumstances, show plainly, as we think, how the defendants understood the memorandum in question.

The question of variance, though reserved in the finding, has not been pursued, and we suppose therefore that it is abandoned. We might perhaps say the same as to the proof of loss. At all events, we think the denial of the defendants of all liability to the plaintiff is a waiver of such proof. *Norwich & New York Transportation Co.*, v. *The Western Massachusetts Ins. Co.*, 34 Conn., 561.

We think the plaintiff is clearly entitled to recover, and we advise the Superior Court to render judgment accordingly for the amount stated in the finding.

In this opinion the other judges concurred.