## SPRINGFIELD FIRE & MARINE INS. CO. v. E. B. COCKRELL HOLDING CO.

No. 6371—Opinion Filed Dec. 11, 1917.

(169 Pac. 1060.)

(Syllabus.)

**1. Insurance—Fire Insurance — Change in Interest or Title—Waiver.**

The insurance policy provided: "This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void · * * * if any change * * * take place in the interest, title or possession of the subject of insurance. * * *" In a suit thereon by the H. Company the facts were that prior to the loss said company, acting through W., an issuing agent of the company, sold and conveyed the subject of insurance to P. Whereupon W. wrote to the H. Company: "Please transfer insurance to Mr. P. and forward same to me for approval, and I will collect the unearned premium for you." In answer the H. Company wrote to W., inclosing him the policy, with request that he prepare the assignment thereof to P. and return the same to the H. Company. Before it was received and the assignment thereof approved by W. as agent for the insurance company, the subject of insurance was destroyed by fire. Held, that the insurance company waived the forfeiture incurred by a sale of the subject of insurance, and was estopped to plead the same.

**2. Same.**

Any act of an insurance company recognizing as an existing contract with it the policy sued upon, after knowledge that the cause of forfeiture has occurred is a "waiver" of such cause of forfeiture.

**3. Same—Right of Action.**

During the life of the policy the insured sold and conveyed the subject of insurance to P., but prior to assignment thereof the subject of insurance was destroyed by fire. The contract of sale provided that the policy was to be held by the insured and loss, if any, payable to it as its interest may appear. Held, that P. was not the owner of the policy with right of action thereon in him.

Error from District Court, Oklahoma County; W. R. Taylor, Judge.

Action by the E. B. Cockrell Holding Company against the Springfield Fire & Marine Insurance Company, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

Scothorn, Caldwell & McRill, for plaintiff in error.

Ledbetter, Stuart & Bell, for defendant in error.

TURNER, J. This was an action on a fire insurance policy issued by the Springfield Fire & Marine Insurance Company, of Springfield, Mass., to the Aetna Building & Loan Association on December 18, 1909, and expiring December 18 1912, covering a one-story shingle-roof building located on lots 1 and 2, block 7, in the town of Apache, Okla., for $450, assigned on March 2, 1912, to the E. B. Cockrell Holding Company by the Aetna Building & Loan Association by written assignment indorsed on the policy, with the written consent of the company. A jury was waived, and a trial had to the court, and judgment rendered for the full amount of the policy. To review which this proceeding in error was commenced.

The insurance company denied liability on the ground:

That prior to the fire, to wit, on November 1, 1912, "* * * the E. B. Cockrell Holding Company ceased to be the owner in fee simple of the ground upon which said dwelling house was situated, and that the change in ownership of the subject of the insurance was not agreed to and consented to by the insurance company by indorsement written on the policy as therein provided."

There was a reply setting out facts by which it was claimed that the breach of the condition relied upon in the answer was waived, in this, that while the ownership of the subject of the insurance had changed as alleged, the agent of the insurance company acted as agent of the Holding Company in making a sale of the property, and that he therefore had knowledge of the change of ownership, and on account of such knowledge the insurance company was estopped from asserting the forfeiture.

The policy was the standard form of insurance policy, and contained, among other things, the following:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if any change * * * take place in the interest, title, or possession of the subject of insurance. * * *"

And also:

"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy, except such as by the terms of this policy may be the subject of the agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

The undisputed facts are that E. B. Cockrell Holding Company, acting by E. B. Cockrell, its vice president, on October 27, 1912, sold the building covered by the policy, together with the lot on which it was located, to John I. Powell and entered into a contract setting out the terms of the sale and, pursuant thereto, executed a deed conveying the property to Powell. The contract provided for the payment of $100 cash and the execution of a note for $100, due May 1, 1913, and one due November 1, 1913, for $315; that the deed, contracts, and notes be placed in escrow in the Apache State Bank; and that the deed be delivered upon the payment of the note maturing May 1, 1913. The contract also provided:

"The party of the second part agrees to pay all taxes and insurance after November 1, 1912, on said property, except the taxes for 1912, and prior thereto, which taxes shall be paid by the party of the first part. The policy of insurance shall be held by the party of the first part, and loss, if any, shall be payable to the party of the first part as its interests may appear."

The "party of the second part" thus referred to was Powell. E. D. Williams was the agent of the insurance company at Apache, and it was agreed that he was "an issuing agent," clothed with the power and authority of such agent. Williams acted as agent for the Cockrell Holding Company in making the sale of the property covered by the insurance. On November 4, 1912, E. B. Cockrell, vice president of the Cockrell Holding Company, wrote Williams at Apache making inquiry as to whether or not Powell had signed the notes and contract of sale to the Apache State Bank. On November 5, 1912, Williams answered by letter, thus:

"Dear Sir: I thought I wrote you that the delay was caused by Mr. Powell sending abstract to an attorney at Anadarko for examination; it is here, notes signed and I instructed the bank to forward same to you with $75. Please transfer the insurance to Mr. Powell and forward same to me for approval, and I will collect the unearned premium for you. Send mortgage form if you have any."

To which, on November 7, 1912, Cockrell replied:

"I herewith inclose the insurance policies on the property we sold to Mr. Powell, and if you will prepare the assignment which you wish me to sign and forward to me, I will sign and return them. You can collect the unearned premium and remit the same to me."

What Williams meant when he requested Cockrell to "Please transfer the insurance to Mr. Powell" was for Cockrell to fill out a blank form on the back of the policy, entitled, "Assignment of Interest by Insured," so as to read, "The interest of the E. B. Cockrell Holding Company as owner of property covered by this policy is hereby assigned to John I. Powell, subject to the consent of the Springfield Fire & Marine Insurance Company," and to date and sign

it. And when he further said, "and forward same to me for my approval," he meant that he (Williams), as agent for the company, would, when he received the policy, fill out the blank immediately below the blank filled out by Cockrell, entitled, "Consent by Company to Assignment of Interest," so as to read, "The Springfield Fire & Marine Insurance Company hereby consents that the interest of E. B. Cockrell Holding Company as owner of the property covered by this policy be assigned to John I. Powell," and date and sign it as agent of the insurance company. And when he further said, "I will collect the unearned premium for you," he meant to do so from the company, after the transfer and approval were completed in the manner stated. But it seems that Cockrell did not precisely understand, and hence wrote Williams the letter of November 7th supra; and it was while this letter inclosing the policy was in transit to Williams, or before either transfer or approval was executed, that is, on November 9th, the loss occurred. Whereupon, the next day, Cockrell wrote Williams, in effect, to take no further steps in the matter, but return the policy to him for the purpose of laying the facts before the adjuster, and when the company refused to pay the loss, brought this suit.

There can be no doubt that, had the policy been received by Williams before the loss occurred, the transfer would have been made in due course by Cockrell and approved by Williams as agent of the insurance company, pursuant to the understanding between them, evidenced by their letters aforesaid. On this state of facts the court did not err in holding that the cause of forfeiture occasioned by the change of interest which had taken place in the subject of the insurance by its sale to Powell had been waived by the insurance company. This for the reason that the company, after knowledge that the cause of forfeiture had occurred, recognized the contract of insurance as valid and subsisting, and hence waived the forfeiture and is estopped to assert it. We say the company, after knowledge of the cause of forfeiture, recognized the contract of insurance as existing, for the reason that, while Williams had no doubt acted as the agent of the Holding Company in the sale of the subject of insurance up to the time he wrote Cockrell the letter of November 5th, and as such, it might be said, had no knowledge of the sale and occasion of forfeiture as agent of the insurer, yet when he said in that letter,

"Please transfer the insurance to Mr. Powell, and forward same to me for approval," he thereby ceased to act as the agent of the Holding Company, and resumed action as agent for the insurance company, basing his action in the premises upon direct knowledge of the sale and consequent cause of forfeiture acquired while acting as agent for the Holding Company. This knowledge was that of the insurance company, and his action in recognizing the contract of insurance as existing, by requesting Cockrell to transfer it to Powell and forward the same to him for approval, was that of the insurance company waiving the cause of forfeiture brought about by the sale of the subject of insurance and consequent cause of forfeiture of the contract of insurance.

This is in keeping with the general rule nowhere clearer stated than in Benninghoff v. Agricultural Ins. Co., 93 N. Y. 495. That was a suit upon a fire insurance policy issued by the defendant to John E., who assigned it to Frederick W., and he to George Benninghoff, the plaintiff. During the life of the policy John E. conveyed the subject of the insurance to Frederick W., with the subsequent assent of the agent of the company. Thereafter Frederick W. reconveyed the insured property to John E., who thereafter conveyed it to plaintiff. No consent to said two last conveyances was obtained from defendant, and no assignment of the policy was made by Frederick W. to John E., or by John E. to the plaintiff, but later, defendant's agent was notified of said two last transfers of the premises, and consented in writing to an assignment of the policy by Frederick W. to plaintiff, and the policy was so assigned. Both the assignments consented to by the agent were reported by him to defendant. No prior written consent of the defendant was ever obtained to any of these conveyances; the consent to the assignments of the policy being given afterwards. The pertinent part of the policy read:

"Agents of the company are permitted to give the consent of the company to assignment of policies * * * on giving notice of the same to the company, * * * but no agent of the company is permitted to give consent of the company in any other case required by the provisions of this policy, or to waive any stipulation or condition contained therein; but in all cases where the consent of the company is required by this policy, other than the consent to the assignment of the policy, * * * such consent must be obtained at the home office of the company."

The issues joined were as here, passing upon which the court said:

"It is claimed that subsequent to the issue of the policy such transfers of the title to the property insured had been made by the owners, without the consent of the defendant, that certain clauses in the policy had been violated, and by reason thereof it had become forfeited and avoided. It may be promised that the transfer of the title of property insured, under a policy prohibiting such transfer does not operate ipso facto to annul and destroy the policy, but simply confers upon the defendant the right to have it declared void by raising that question at the proper time if it should eventually elect to do so. Thus it was said by Judge Earl in Titus v. Glens Falls Ins. Co., 81 N. Y. 419: 'Where there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach and claim a forfeiture. It may consult its own interest, choose to waive a forfeiture, and this it may do by express language to that effect, or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result. * * *'"

Further in the opinion the court lays down the general rule that:

"Any act of the company recognizing this as an existing contract with it, performed after the cause of forfeiture had occurred, and the same had come to its knowledge, would, within the authorities, be treated as a waiver of such cause of forfeiture."

In the headnotes it is said:

"The transfer of the property insured under a policy prohibiting such transfer does not operate ipso facto to annul and destroy the policy, but simply confers upon the company the right to have it declared void if it elects to do so. Hence it may waive the cause of forfeiture, and does so by consenting to an assignment of the policy to the grantee of the property.

"An insurance company, having received notice of its agent's consent to a transfer of the property insured, must immediately repudiate his act, or it will be precluded by its delay from setting up the agent's want of authority after a loss has occurred."

Applying the doctrine of which, we say that the insurance company waived the cause of forfeiture, not only by expressly consenting to the sale of the property and to an assignment of the policy, but impliedly by failing to immediately repudiate the act of transfer and continuing to treat it as an existing contract, and is therefore estopped to claim a forfeiture after the loss occurred.

Illinois Fire Ins. Co. v. Stanton, 57 Ill. 354, was assumpsit on a policy of insurance issued to Matthew Stanton insuring certain of his property from loss by fire in a sum certain. By its terms it was made payable, in case of loss to one McClellan, who held a mortgage on the premises. The action was brought by Matthew Stanton for the use of J. H. Bobb, the assignee of the McClellan mortgage. The defense was a forfeiture of the policy by reason of a sale of the subject of insurance by Matthew Stanton to Adam Stanton, contrary to the provisions of the policy, which provided that on the alienation or sale of the property insured the insurance should cease and be void, unless the policy should be duly assigned or confirmed by the consent of the directors, previous to the loss, and no policy should be regarded assigned unless the consent of the directors be certified thereon by the secretary of the company. In reply to the plea of forfeiture, plaintiff alleged a waiver thereof, in proof of which the evidence disclosed that the parties in interest, before a confirmation of the sale by Matthew to Adam Stanton, went to the local agents and told them they were about to make the transfer. Other policies on the property were changed by the agents, in view of the sale, at the request of the parties in interest, and, when they were asked as to the best course to pursue with reference to the policy in question, were told it would be "good" until it could be procured from St. Louis, and the formal consent of the company entered upon the policy itself. But before the policy was received and any formal consent entered thereon, the loss occurred. Under this state of facts the court held the forfeiture had been waived, and in passing said:

"It is objected that the local agents had no authority to give the consent of the company, in this manner, to the sale of the property to Adam Stanton. It is in proof that it had been the custom of the agents to give such consent, and their acts had always been ratified by the company. In giving such consent, the agents were therefore acting within the scope of their authority. Such agents will be held to have such power as the company knowingly permits them to exercise, and the fact that the company ratifies such acts on the part of their agents will be regarded as evidence of that authority in the agents.

"It is manifest from this whole evidence that, if the policy had been received from St. Louis before the loss occurred, the formal consent of the company to the sale would have been entered upon it in pursuance of the agreement with the local agents.

"That the sale by Matthew Stanton to Adam Stanton of the insured property, if

not made according to the provisions of the fifteenth condition contained in the policy, would authorize the company to declare the policy forfeited, we entertain no doubt. It is the contract between the parties that such an act on the part of the assured would work a forfeiture. But the grave question in the case is whether the appellant did not waive the forfeiture, or whether the company is not now, by the acts of its agents, estopped from denying that they assented to the alienation of the property of Adam Stanton. * * * The provisions of the fifteenth condition that the policy should cease and be void in case of the alienation of the property were inserted for the benefit and protection of the company, and no . reason is perceived why the company may not waive that condition as well as any other restriction on the assured inserted in the contract for their benefit."

And, after holding that company had waived the forfeiture, it affirmed the judgment of the trial court.

Commercial Fire Ins. Co. v. Belk, 88 Ark. 506, 115 S. W. 172, was a suit on a fire insurance policy. The policy contained the condition respecting a change of title or possession of the subject of insurance, as here. During the life of the policy, and before the loss, plaintiff contracted in writing with Kifer to sell and convey him the property when the price agreed on was paid. One K., an issuing agent of defendant, drew the contract for them. In the course of or after the transaction with Kifer, the agent assured plaintiff that her policies were "all right," after which she rested in the belief that the policy was a valid and subsisting contract until the property thereby insured was destroyed by fire. Under this state of facts the court held that the insurance company could not avoid the policy for the reason that the condition had been waived, citing German-American Ins. Co. v. Harper, 75 Ark. 98, 86 S. W. 817, and cases cited; Arkansas Mutual Fire Ins. Co. v. Claiborne, 82 Ark. 150, 100 S. W. 751. See, also, Keeler v. Niagara F. Ins. Co., 16 Wis. 523, 84 Am. Dec. 714; Batchelor v. People's F. Ins. Co., 40 Conn. 56; Imperial F. Ins. Co. v. Dunham, etc. (Pa.) 3 Atl. 579; Springfield F. & M. Ins. Co. v. Mattingly (Ky.) 90 S. W. 577.

And so we say here that, when Williams wrote Cockrell, as he did, with knowledge of the sale, to "Please transfer the insurance to Mr. Powell and forward the same for my approval," he thereby, in effect, assured him his policy was "all right," and was an existing contract, and so regarded by his company, and which was, in effect, a waiver of the condition in question; hence the company is estopped to claim a forfeiture on that ground. And this, too, although the policy contained the provision above set forth, that:

"* * * No officer or agent * * * of this company shall have power to waive any provision contained in this policy, except as by the terms of this policy may be the subject of the agreement indorsed hereon or added hereto. * * *"

This for the reason stated in St. Paul & C. Ins. Co. v. Mountain Park Stock Farm Co., 23 Okla. 79, 99 Pac. 647, where, quoting approvingly from 16 Am. & Eng. Enc. Law, we said:

"Since the conditions of a policy a breach of which by the assured will give rise to a forfeiture are inserted for the benefit of the insurance company, they may be waived either pending the negotiation for the insurance or after such negotiation has been completed and during the currency of the policy, and this either before or after the forfeiture is incurred; and, since forfeitures are not favored in the law, the courts are always prompt to seize hold of any circumstances that indicate an election to waive."

It is next contended that, should we hold the cause of forfeiture waived and the policy therefore in force and effect at the time of the loss, then Powell, being the sole and absolute owner of the property, was the owner of the policy, with right of action thereon in him, and not in plaintiff. Not so; for, assuming Powell to be the absolute owner of the property, it does not follow that he was the owner of the policy, with right of action thereon in him after the loss. This for the reason that the evidence nowhere discloses that the policy was actually assigned to him by plaintiff, and besides the contract of sale provides that:

"The policy of insurance shall be held by the party of the first part, and loss, if any, shall be payable to the party of the first part as its interests may appear."

Finding no error, the judgment is affirmed.

All the Justices concur.