This action was commenced in the district court of Garvin county on the 21st day of January, 1915, by the Lucky Strike Oil Gas Company, as plaintiff, against the North British 
Mercantile Insurance Company, as defendant, to recover the sum of $1,000 upon a fire insurance policy issued by the defendant and covering one standard rig, derrick, belt, and attachments located in Carter county. Upon a trial judgment was rendered for the plaintiff, from which an appeal was by the defendant prosecuted to this court, and the judgment was reversed for the reason that plaintiff had failed to prove that proof of loss had been by it furnished to the defendant, or that such proof of loss had been waived; the opinion on that appeal being reported in North British Merc. Ins. Co. v. Lucky Strike O. G. Co., 70 Oklahoma, 173 P. 845. Upon a second trial a verdict was returned in favor of the plaintiff for the sum of $960, with interest thereon at the rate of six per cent. per annum from January 1, 1915, upon which judgment was entered, and the case is again brought to this court for review.
The question of proof of loss is not now presented, but the insurance company contends that the contract of insurance had been breached by the plaintiff; that the court erred in giving certain instructions to the jury; and that the verdict of the jury was excessive, unauthorized by and contrary to law.
In the answer of the defendant it is averred, as a second defense, that after the issuance of said policy and on or about the 23rd day of July, 1914, the subject of said insurance became incumbered by a chattel mortgage, made, executed, and delivered by the plaintiff to Limbocker Oil Company, which was not authorized by any indorsement upon said policy, and that said chattel mortgage incumbrance constituted a violation of the insurance contract sued upon and rendered the same wholly null and void; and as a third defense the defendant pleaded that after the issuance of said policy a change, other than by the death of the insured, took place in the interest and title of the subject of said insurance by the voluntary act of the insured, in that the plaintiff sold, transferred, and conveyed to Limbocker Oil Company a certain interest in the subject-matter of such insurance by entering into a certain agreement in writing, a copy of which is set out in the answer, and that said change of interest and title in the subject-matter of said insurance violated the express terms of said insurance policy and rendered the same wholly null and void.
In its reply the plaintiff admitted the execution of the contract set out in the answer, and pleaded that immediately upon the execution of said contract the plaintiff, by its agent, J.H. Mathers, submitted said contract to the agent of the defendant issuing said policy of insurance, who was then the local agent of the defendant in Ardmore, and requested said defendant to make such indorsement upon said policy showing the execution of said contract and the agent might see fit, but that said agent at said time expressed it as his opinion to said Mathers that the execution and delivery of said contract did not require the indorsement of the same upon said policy; that said agent expressed it as his opinion that said instrument was not a chattel mortgage, but was a mere contract, and that the policy did not require the fact of its execution to be indorsed thereon in order that said policy might remain in full force and effect; and further pleaded that said defendant is now estopped by reason of said conduct of its said agent, who was authorized *Page 194 
to make such indorsement, and who declined to do so upon the submission of all the facts to him, and that the defendant has waived the provisions of said policy as to said contract and agreed that said instrument was not a chattel mortgage, and waived the provisions of said policy requiring the indorsement upon said policy of such change in the title of the plaintiff in said property; that but for the conduct of the agent of said defendant upon said occasion this plaintiff would have had said indorsement made.
The policy of insurance on which this suit was brought is the regular Oklahoma standard form, and the provisions therein material on this appeal are as follows:
"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the subject of insurance be personal property and be or become incumbered by a chattel mortgage. * * *"
"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if any change other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of insured or otherwise."
The contract entered into between the plaintiff and the Limbocker Oil Company, and referred to by the defendant as both a chattel mortgage and contract of sale, is, in effect, an executory contract of sale, but in our opinion it is immaterial whether it be treated as a mortgage or a contract of sale, as in either event its execution and delivery without the consent of the insurance company indorsed thereon would violate the terms of the policy, unless the insurance company by its act or the acts of its agent waived the indorsement required by the policy, and this brings us to the consideration of the statements and acts of Mr. Jones, the agent of the defendant at Ardmore, and the one who issued the policy to the plaintiff, in regard to said contract.
J.H. Mathers, secretary and director of the plaintiff, testified, in substance, that Mr. Jones, a member of the firm of C.H. Clements Company, solicited the insurance and delivered the policy upon which the action was brought, and that the plaintiff paid the premium thereon; that on or about the 23rd day of July, 1914, he had a conversation with the agent, Jones, in regard to the contract with the Limbocker Oil Company; submitted said contract to Jones and, after stating that he could not remember the exact language used, said:
"But the substance of it was that I had the contract there on the desk and I showed it to Mr. Jones and we discussed whether or not it would be necessary to attach a copy of this contract to the insurance policy or to indorse permission to enter into this contract on the insurance policy, and I advised him that I had had no experience in fire insurance. I had never had a loss and I didn't know their technical rules. And Mr. Milburn and the directors had asked me to speak to him about it, and he and I both agreed that it would not be necessary, and he then asked me where the policy of insurance was and I told him that Mr. Vaughn, who was our treasurer, and Mr. Milburn, who was our secretary, had the policy at Pauls Valley at their office. And if it was necessary, I would send and get it if he wanted it to attach a copy of this contract to it with out indorsement. He said it was all right, but it was not necessary, but he said, 'However, I will look into it and if I find that it is necessary I will let you know.' Now that was the substance of the conversation, the best I remember it."
From this evidence, which is undisputed, it clearly appears that the plaintiff sought to comply with the terms of the policy and submitted the contract of sale to the issuing agent of the defendant for the purpose of having the defendant make such indorsement on the policy as was necessary to preserve the insurance, and that the agent stated that such indorsement was not necessary; that the policy was all right; however, that he would look into the matter and if he found that an indorsement was necessary, he would so advise the plaintiff.
It is obvious that this statement of the agent had a tendency to lead the plaintiff into the belief that the policy would remain in full force and, effect without such indorsement, and that it was through the fault of the agent that the indorsement was not made, and as the agent never afterward indicated to the plaintiff that it was necessary that the indorsement be made, it was but natural that the plaintiff should believe that the policy would remain in force. This, in our opinion, constituted a waiver of the cause of forfeiture, and the defendant was estopped to plead such forfeiture when sued on the policy.
The defendant insists that it has been established by the decisions of this court that a policy writing agent at the inception of the contract may waive provisions of the *Page 195 
policy, but that an oral waiver cannot be made by the agent after the policy has been issued and delivered, for the reason that the assured is advised of the limitations of the power of the agent, as set forth in the contract of insurance. The provision in the policy as to limitations of the agent's authority reads as follows:
"This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions and agreements, or conditions as may be indorsed hereon or added hereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as by the forms of this policy may be subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, or agent or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting, the insurance under this policy exist or be claimed by the insured unless so written or attached."
And defendant cites in support of this contention the case of Des Moines Insurance Co. v. Moon, 33 Okla. 437, 126 P. 755, wherein the court held:
"A provision of a policy of fire insurance executed in the Indian Territory before the admission of the state, which provided that 'this entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void, * * * if the interest of the insured be other than unconditional and sole ownership, * * *' was not waived by reason of the fact that the agent, countersigning said policy, had knowledge at the time the policy was issued that the insured did not have unconditional and sole ownership, or by the act of the agent thereafter indorsing upon the policy a vacancy permit, where the policy provided that no officer, agent, or representative of the company shall have power to waive any provision or condition of the policy, unless such waiver, if any, shall be written upon or attached to the policy."
But that case involved a policy issued in the Indian Territory before the admission of the state into the union, and this court held that it was bound to follow the rule announced by the Supreme Court of the United States in Northern Assurance Company of London v. Grand View Building Association,183 U.S. 308, 46 L.Ed. 213. However, in Western National Insurance Company v. Marsh, 34 Okla. 414, 125 P. 1094, this court refused to follow the rule of Northern Assurance Company of London v. Grand View Building Association in cases arising on contracts of insurance issued since the admission of the state, and as to such contracts adopted the rule supported by the great weight of authority of the state courts that where the issuing agent had authority to make the contract of insurance and authority to indorse thereon the consent of the company to the existence of other insurance, when he was advised of other insurance and had full knowledge thereof, and executed and delivered the contract and received the premium from the insured, the company was bound by his knowledge and could not defeat recovery because of such other insurance. To the same effect is Insurance Company of North America v. Little,34 Okla. 449, 125 P. 1098. While in the first case mentioned the agent had knowledge of other insurance, and in the other had knowledge of a chattel mortgage on the subject of insurance at the time the policy was issued, no good reason appears why the doctrine of these cases should not apply to the facts in the case at bar. The issuing agent had authority to indorse on said policy an agreement authorizing the contract between the plaintiff and the Limbocker Oil Company, and had this indorsement been made by him the validity of such insurance could not have been questioned, and when he was advised of said contract and was requested to make such indorsement but failed to do so because he considered such indorsement unnecessary and so notified the plaintiff, thereby recognizing as still existing the contract of insurance, the defendant is bound by his knowledge and conduct and should not be permitted to question the validity of such policy on the ground that such indorsement in writing was not made. This is supported by the following: Springfield Fire Marine Ins. Co. v. E. B. Cockrell Holding Co., 67 Okla. ___, 169 P. 1060; Fidelity-Phenix Fire Ins. Co. v. School Dist. No. 62 of Jackson County, 70 Oklahoma,174 P. 513; American Surety Company of New York v. Stinnett,78 Okla. 31, 188 P. 1060; British American Assur. Co. v. Francisco (Tex. Civ. App.) 123 S.W. 1144; Bank of Anderson v. Home Ins. Co. (Cal.) 111 P. 507; Liquid Carbonic Acid Mfg. Co. et al. v. Phoenix Ins. Co. (Iowa) 101 N.W. 749; Briefs on Laws of Insurance by Cooley, vol. 3, page 2514.
The instructions complained of fairly state the principles of law applicable to this case, and the court did not err in giving the same to the jury.
The verdict was for the sum of $960, with interest thereon from January 1, 1915. In St. *Page 196 
Paul Fire Marine Insurance Company v. Robison, 72 Oklahoma,180 P. 702, it was held that interest cannot be recovered upon unliquidated damages where it is necessary for a judgment or verdict to be had in order to ascertain the amount of such damages. Counsel for defendant in error do not question the correctness of the rule there announced, but suggest that if the decision in that case is followed this court should modify the judgment by eliminating the item of interest up to the date of the judgment. This in effect is a confession of error, and without considering the correctness of the rule announced, we will follow counsel's suggestion.
The judgment will therefore be modified by deducting interest on the damages allowed from January 1, 1915, to the date of the verdict, viz., January 16, 1919, and as so modified is affirmed.
KANE, JOHNSON, McNEILL, and ELTING, JJ., concur.